STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Nancy GALLOWAY, Respondent.

No. C2–84–638.

Court of Appeals of Minnesota.

Sept. 11, 1984.

R.D. Blanchard, Laura S. Underkuffler, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Diane JoliCoeur, Taylor Law Firm, P.A., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Nancy Galloway was a passenger in one of two vehicles involved in an accident. She commenced an action against the two drivers and a bar under the Civil Damages Act. One driver was uninsured, and she made a claim against her insurer for uninsured motorist benefits. Her rights under this policy are the subject of this appeal.

Before State Farm arbitrated her uninsured motorist claim, Galloway settled, through the use of *Pierringer* releases, with the insured driver and the bar. After learning of the settlement, State Farm commenced an action for declaratory judgment, seeking to establish that her settlement precluded her from receiving uninsured motorist benefits because she violated the consent-to-settlement provision of the policy. The trial court held the consent-to-settlement provision invalid because it reduces the uninsured motorist coverage an insurer is statutorily required to provide and conflicts with the purposes of the Min-

nesota No-Fault Act, granted Galloway's motion for summary judgment, and ordered State Farm into arbitration. We affirm.

## ISSUE

Does an insured's *Pierringer* release settlement of her personal injury claim with two of three joint tortfeasors for less than their policy limits, prior to payment of any uninsured motorist benefits, preclude the insured from making an uninsured motorist claim?

## FACTS

This case arises out of an automobile accident on December 19, 1979, in Northfield, Minnesota. Galloway was a passenger in the back seat of an uninsured vehicle owned and driven by Francis Kadrlik which collided with a vehicle driven by Paul Fahning. At the time of the accident Galloway was insured for purposes of no-fault and uninsured motorist coverage under a policy issued by State Farm to her father, Robert Galloway.

Galloway subsequently commenced an action on April 28, 1980, against Kadrlik, Fahning and Marty's Downtown, a bar in Northfield where Kadrlik had been drinking before the accident. Fahning had automobile liability insurance coverage in the amount of $100,000. Marty's had a liquor liability policy with limits in excess of $100,000. Kadrlik was uninsured, so Galloway made a claim against State Farm for uninsured motorist benefits.

On August 1, 1981, Galloway requested arbitration of her claim against State Farm for uninsured motorist benefits. Despite repeated requests to proceed with arbitration, State Farm delayed choosing an arbitrator and asked that the arbitration be postponed until after resolution of the third-party action, which was scheduled for trial on September 14, 1981.

In a letter from State Farm to Galloway dated August 25, State Farm acceded to Galloway's demand to arbitrate the uninsured claim. The parties were in the pro-

cess of choosing the arbitrator to hear this claim when, on September 3, 1981, Galloway settled her tort claims against Fahning and Marty's for $60,000 and $10,000, respectively.

Galloway executed *Pierringer* releases in favor of Fahning and Marty's, but specifically retained her cause of action against Kadrlik. Galloway's settlements with Fahning and Marty's Downtown were consummated without State Farm's knowledge or consent.

After State Farm was notified of the settlements, it informed Galloway that the settlements violated the terms of the policy, based on the following provision:

> There is no coverage under coverage U [uninsured] or coverage W [underinsured] for any insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury.

State Farm then brought a declaratory judgment action to determine the parties' rights and obligations on the uninsured motorist coverage.

## DISCUSSION

State Farm seeks to establish that Galloway's settlement with two insured tortfeasors precludes her from receiving uninsured motorist benefits because she violated the consent-to-settlement provision contained in the policy. There is no question that Galloway did not comply with the provision. She contends that she was not required to do so.

The district court held that the consent-to-settlement provision is invalid because (1) it reduces the uninsured motorist coverage which State Farm is statutorily required to provide, and (2) it conflicts with the purpose of the Minnesota No-Fault Act. The trial court recognized State Farm's potential subrogation rights but held that since State Farm had not yet paid any benefits it had no subrogation rights.

Uninsured motorist coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of injury." Minn.Stat. § 65B.49, subd. 4(1) (1982).

■ The insurer's undertaking is to stand in the place of the uninsured motorist with respect to its insured to the extent of its policy provisions. An insured is entitled to receive the same benefits he would have received had the uninsured motorist been insured. *See Van Tassel v. Horace Mann Insurance Co.*, 296 Minn. 181, 189, 207 N.W.2d 348, 353 (1973); *Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 334, 208 N.W.2d 860, 864 (1973); *Taylor v. Great Central Insurance Co.*, 305 Minn. 446, 448–49, 234 N.W.2d 590, 591 (1975).

■ In finding the consent-to-settlement provision invalid, the trial court reasoned that the provision results in the insured having fewer rights than he would have had the uninsured motorist been insured. Under *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978), a plaintiff pursuing claims against multiple parties may settle with any number of them, yet preserve a claim for proportional shares of the damages against the remaining defendants. The trial court reasoned that neither an uninsured motorist nor the uninsured carrier standing in his place has any right to affect such an agreement. We quote liberally throughout this opinion from the well-done trial memorandum:

> Given that both the statute and case law interpreting [uninsured motorist coverage] clearly put the uninsured motorist insurer in the position of the uninsured motorist as regards its insured, it is an expansion of [the insurer's] rights, and a consequent diminution of the insured's, to put [the insurer] in the position of being able to approve or disapprove settlements with insured tortfeasors.

The second basis for the trial court's decision was that the consent-to-settlement provision runs contrary to the purposes of the Minnesota No-Fault Act. Minn.Stat. § 65B.41–.71 (1982). We agree. The trial

court relied on *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). In that case the Supreme Court held that policy provisions requiring an insured to exhaust a tortfeasor's liability limits before claiming underinsured benefits were contrary to the purposes of the No-Fault Act (to ease the burden of litigation and encourage prompt payment of claims) and that, therefore, such requirements were void. *Id.* at 260–61.

In *Schmidt* the parties conceded and the Supreme Court accepted that an insured "has a right to full control over the lawsuit against the tortfeasor, a control which would include the right to make the best settlement possible." *Id.* at 260. The court did not find it appropriate to force an insured to litigate a claim to final judgment in order to exhaust the policy limits. The trial court stated that it was "mindful of the differences between uninsured and underinsured coverages and those between consent-to-settlement and exhaustion provisions, but finds that the logic rendering exhaustion provisions void equally persuasive regarding consent to settlement provisions." We agree.

■ The trial court further stated:

One difference between the two coverages makes the logic of *Schmidt* even more compelling with regard to uninsured coverage than it is for underinsured coverage. With underinsured coverage the insurer is stepping into the place of the settling tortfeasor and providing coverage in excess of his policy limits. In uninsured motorist situations involving settlements with jointly liable insured tortfeasors, the settlement is not with the party whose liability the insurer has assumed. The only way the settling tortfeasor's liability could be imposed upon the insurer is through the uninsured tortfeasor's joint liability. *See Maday v. Yellow Taxi Company of Minneapolis*, 311 N.W.2d 849 (Minn.1981). The Pierringer releases granted the insured tortfeasors effectively preclude the uninsured motorist from any liability for the insured tortfeasor's proportionate liability. *Frey v. Snelgrove*. Consequently, the uninsured motorist insurer will bear none of that liability either. The significance of this is that if it is against the No-Fault Act policies to preclude an insurer from interfering with its insured's settlement against the party whose liability the insurer will bear, it more obviously offends those policies to allow interference with settlements with parties whose liability the insurer is not by contract assuming and by virtue of the nature of the settlements will never have to assume.

Accordingly, we hold the consent-to-settlement provision to be invalid.

State Farm combines its arguments regarding the consent to settlement provision and its subrogation rights into one argument, but we believe the subrogation rights deserve separate consideration. *See Schmidt*, 338 N.W.2d at 262 (court considered the subrogation question separately from the validity of the exhaustion clause).

State Farm contends that the district court is misreading *Schmidt* and that the case supports the basis of their appeal: that under Minnesota law an uninsured motorist carrier has a right to subrogation against tortfeasors jointly liable with the uninsured motorist. State Farm's subrogation rights are governed by the common law. There is no statutory provision for subrogation comparable to that which existed for underinsured insurers. *See* Minn. Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980). As the trial court stated, however:

* * * had State Farm made any payments to Galloway it would have had subrogation rights against the insured tortfeasor to claim from them both the damages they were directly responsible for and those of the uninsured motorist for which they were responsible by virtue of the rules of joint liability. *Maday* in part involved a claim by an insured tortfeasor jointly liable with an uninsured tortfeasor [against which the uninsured motorist carrier, who had paid its insured, had no subrogation rights.] The

Court dismissed the contention by reference to *Christy v. Menasha Corp.*, 297 Minn. 334, 211 N.W.2d 773 (1973). In *Christy* the Court had determined that a general contractor's insurer was subrogated to all of the insured's rights, including contractual indemnity rights, against a subcontractor. From this it does follow that an uninsured motorist insurer would be subrogated to plaintiff's entire claim against all tortfeasors, not merely that against the uninsured tortfeasor.

The insurer will only have this subrogation right, however, if it has paid uninsurance benefits prior to release of the tortfeasor. *See Schmidt*, 338 N.W.2d at 263. State Farm has paid no benefits and thus has no existing subrogation right. Although State Farm did not receive notice of the proposed settlement, its absence is not fatal to Galloway's claim for uninsured benefits. First, State Farm persisted in delaying arbitration because it wanted "the guidance of the jury's verdict" in the negligence action. Galloway relied on State Farm's repeated requests to "proceed with the litigation and collect the money damages available." After receiving notice of the settlement, State Farm immediately claimed that both the lawsuit and settlement violated the terms of the policy and thereby voided the uninsured benefits. By encouraging resolution of the action, State Farm waived any right it had to notice of settlement with the insured tortfeasors. Its potential rights against the uninsured tortfeasor are unimpaired.

State Farm claims that the amount received by Galloway in exchange for the *Pierringer* releases must be deducted from the amount of her damages before any calculation of entitlement to uninsured motorist benefits is made.

We agree with the trial court that having entered into *Pierringer* release settlements with the insured tortfeasors, relieving State Farm of any potential liability of cross-claimants, Galloway should stand in the same position as she would have if the remaining tortfeasor had been insured.

*See Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 208 N.W.2d 860 (1973).

The insurer is not entitled to benefit from any "gaps" between the amount its insured receives in settlement from the insured tortfeasors and the policy limits of those insured tortfeasors. State Farm is required to pay Galloway the proportionate part of her total damages attributable to the uninsured motorist.

### DECISION

We affirm the trial court's order compelling State Farm to arbitrate Galloway's uninsured motorist claim.