STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
petitioner, Appellant,

v.

Nancy GALLOWAY, Respondent.

No. C2-84-638.

Supreme Court of Minnesota.

Aug. 23, 1985.

R.D. Blanchard, Minneapolis, for appellant.

Diane E. JoliCoeur, Minneapolis, for respondent.

SIMONETT, Justice.

Claimant had a personal injury claim against three joint tortfeasors, two of whom were insured. She settled with the two insured tortfeasors on *Pierringer* releases, and then sought to invoke her own uninsured motorist coverage. Because, contrary to the terms of her own policy, claimant settled with the two insured tortfeasors without the consent of her uninsured motorist carrier, did claimant lose her right to uninsured motorist benefits? The trial court said no, as did the court of appeals. *State Farm Mutual Automobile Insurance Co. v. Galloway*, 354 N.W.2d 527 (Minn.App.1984). We agree and affirm.

Defendant-respondent Nancy Galloway was injured in an auto accident on December 19, 1979. She was a passenger in an uninsured automobile driven by Francis Kadrlik. Apparently Kadrlik lost control of his car and crashed after engaging in an impromptu car race with a car driven by Paul Fahning. Fahning apparently was under the influence of intoxicating liquor and had been drinking at Marty's Downtown, Inc. (Marty's Bar). Fahning carried auto liability insurance of $100,000. Marty's Bar carried dramshop liability insurance of at least $100,000. Kadrlik, as mentioned, had no liability insurance.

In April 1980, Galloway sued Kadrlik, Fahning, and Marty's Bar. A month later, Galloway put plaintiff-appellant State Farm Mutual Automobile Insurance Company on notice that she might make a claim under her $25,000 uninsured motorist coverage.

A year passed. In June 1981 Galloway offered to settle her uninsured motorist claim with State Farm if State Farm would waive its subrogation rights. State Farm refused "because the injury did not appear serious, the tortfeasors were jointly liable for the whole, and the insurance coverage appeared to be ample to provide adequate compensation." State Farm requested that arbitration of the uninsured motorist claim be postponed until trial of the personal injury action, which was scheduled to come up shortly. Galloway rejected this request and demanded arbitration. State Farm then acceded to this demand and in late August nominated its arbitrator. About a week later, without notice to State Farm, Galloway settled with the two insured tortfeasors for *Pierringer* releases, Fahning's auto insurer paying $61,000 and the dramshop carrier for Marty's Bar paying $10,000.

Upon learning of the settlements, State Farm refused to continue with arbitration, pointing out that Galloway had violated the express terms of State Farm's policy by settling with Fahning and Marty's Bar without its consent and thereby depriving the insurer of its subrogation rights. State Farm then brought this declaratory judgment action seeking a determination that Galloway was not entitled to uninsured motorist benefits. The trial court ruled in favor of Galloway and ordered the claim to be arbitrated. The court of appeals affirmed the trial court's decision, and we granted State Farm's petition for further review.

The trial court held that the "consent to settlement" provision in State Farm's policy was contrary to the No-Fault Act and invalid, and that State Farm's inchoate subrogation right must yield to claimant's right to settle with the insured tortfeasors. The court of appeals agreed, adding that even if State Farm had been entitled to notice of the proposed settlements, by its conduct it had either waived or was estopped from asserting lack of notice.

### The Issues

(1) Can claimant, by settling with the insured tortfeasors on *Pierringer* releases, deprive her uninsured motorist carrier of its inchoate right of subrogation against the insured tortfeasors?

(2) If the answer is yes, is the "consent to settlement" policy provision contrary to the No-Fault Act and invalid?

(3) If the policy provision is invalid, should the uninsured motorist carrier nevertheless be entitled to notice of the pending settlement?

### I.

If the only tortfeasor is an uninsured motorist, uninsured motorist coverage is easy to apply. Rather than try to collect from the uninsured driver, the claimant will ordinarily seek to collect uninsured motorist benefits from her own carrier. The carrier, having paid the benefits, is then subrogated to the claimant's action against the uninsured motorist and attempts to obtain full or partial reimbursement.[1] Here, however, the uninsured motorist is not the only tortfeasor. There are others too, and they are insured. Ordinarily, the presence of other insured joint tortfeasors, even if their liability insurance coverage is adequate to cover the claim, does not prevent the claimant from instead choosing to pursue first her uninsured motorist claim. (*But see* purported changes

made in the No-Fault Act by the 1985 legislature, especially 1985 Minn.Laws, First Special Session, ch. 10, § 123, subd. 5, and ch. 13, § 191.) If claimant receives full compensation in uninsured motorist benefits from her carrier, the carrier is subrogated to claimant's personal injury claim, not only against the uninsured motorist but also against any other insured joint tortfeasors. *Flanery v. Total Tree, Inc.*, 332 N.W.2d 642 (Minn.1983); *Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849 (Minn. 1981).

In deciding how best to proceed with her personal injury lawsuit and her uninsured motorist arbitration claim, Galloway had several alternatives:

(1) She could have proceeded to trial and judgment in her district court action and then, if still not fully compensated, pursued her arbitration claim. Even if the jury placed most of the fault on the uninsured motorist and only a small amount of fault on Fahning and Marty's Bar, because of the insured tortfeasors' joint liability and their ample tort liability coverage, it is likely claimant would make a full tort recovery. In that event, State Farm would have to pay nothing; or

(2) She could have collected uninsured motorist benefits first, either by settlement or arbitration with State Farm, and then, since she had only $25,000 uninsured motorist coverage, continued with her tort action in which State Farm would have a perfected subrogation interest; or

(3) She could have settled with the insured tortfeasors and, if not fully compensated, then proceeded with her uninsured motorist claim in arbitration.

Galloway eventually chose the third route. State Farm contends she should have cho-

---

**1.** The No-Fault Act does not expressly provide for subrogation rights for an uninsured motorist carrier but we have recognized such a right, provided the claimant has first been made whole. *See, e.g., Maday v. Yellow Taxi Co. of*

*Minneapolis*, 311 N.W.2d 849 (Minn.1981). We might add that State Farm's policy expressly provides for subrogation from any party liable for claimant's injury.

sen the first option and, indeed, that Galloway had no other choice.

■ Until it has paid out benefits, State Farm's subrogation right is inchoate. State Farm argues that this inchoate subrogation interest entitles it to deny uninsured motorist coverage if the insured settles her tort claims without State Farm's prior consent. We conclude, however, that State Farm's inchoate subrogation right must yield to claimant's right to control her own causes of action.

■ Nor do we see anything unfair in this, at least where claimant settles with the insured tortfeasors on the basis of *Pierringer* releases. A *Pierringer* release enables claimant to settle her tort claim piecemeal and, in so doing, to eliminate the settling tortfeasor's joint liability for the fault of the other tortfeasors. Here Galloway has settled with Marty's Bar for $10,-000 that part of her total damages attributable to the fault of Marty's Bar, and with Fahning for $61,000 for his part of her total damages. Kadrlik, the uninsured motorist, remains liable for his share of claimant's damages, but he is free of any claims of contribution against him by his cotortfeasors. Neither has he any rights of contribution of his own against his cotortfeasors. *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978). At this point, Galloway now proceeds in arbitration against State Farm for uninsured motorist benefits for that share of her damages attributable to the fault of the uninsured motorist. This would seem to be precisely the exposure for which uninsured motorist coverage is intended.

But what if, says State Farm, the arbitrators should fix claimant's total damages at $70,000 and the uninsured motorist's fault at 50%? Then Galloway collects an additional $35,000 in uninsured motorist benefits even though she has already recovered her damages in full. This, says State Farm, would be an impermissible double recovery. (Actually, Galloway collects only $25,000, her policy limits.) At the very least, State Farm argues, it should be entitled to take a credit for the $71,000 paid for the *Pierringer* settlements against its uninsured motorist liability.

Clearly Kadrlik, the uninsured tortfeasor, has no complaint about double recovery nor would he be entitled to a credit for the settlement money paid. In State Farm's hypothetical, the insured tortfeasors have simply misjudged the value of the claims and paid too much for their releases.[2] Under established tort law, this kind of "overpayment" is not the kind of double recovery of which a cotortfeasor can complain. *Shantz v. Richview, Inc.*, 311 N.W.2d 155, 156 (Minn.1981) ("It should be no concern of the nonsettling defendant how much the plaintiff received from the settling defendant.").

■ State Farm, however, does not stand in the shoes of the nonsettling tortfeasor. As a first-party carrier, it stands in the shoes of the claimant and, therefore, argues that it has a right to complain of a "double recovery" and to claim a credit for Galloway's settlement recovery. There is some logic to this position but we decline to adopt it. State Farm's primary contractual obligation is to pay, subject to its policy limits, benefits which Galloway would otherwise have collected in tort damages from the uninsured motorist. Galloway, by settling for *Pierringer* releases, has limited her tort claim against the uninsured motorist to only those damages attributable to the fault of the uninsured motorist. This

---

**2.** It may be inaccurate to say that Fahning and Marty's Bar paid too much. In theory, they paid only for their proportionate shares of the damages. In practice, however, Fahning and Marty's Bar, out of concern for their joint liability exposure for the uninsured motorist's fault, may have paid for some of claimant's damages attributable to Kadrlik's own fault. If State Farm then duplicated this payment with uninsured motorist benefits, there would be a double recovery. We think it unlikely, however, that the insured tortfeasors would willingly or knowingly pay for that part of Kadrlik's liability exposure already covered by State Farm's uninsured motorist coverage. To put it another way, at least as a general proposition, we do not think that the presence of uninsured motorist coverage distorts settlement negotiations to result in the kind of "double recovery" for which the uninsured motorist carrier can complain.

being so, we hold that Galloway's claim for uninsured motorist benefits is likewise limited to compensate only for those damages attributable to the fault of the uninsured motorist. Indeed, Galloway concedes she is so limited. *See also Klimek v. State Farm Mutual Automobile Insurance Agency,* 348 N.W.2d 103 (Minn.App.1984). True, State Farm loses its inchoate subrogation rights against the insured tortfeasors, but, in return, its uninsured motorist exposure is limited to the several, instead of the joint, liability of the uninsured motorist. This is a fair exchange. It is consistent with the theme stated in a number of our cases that uninsured motorist benefits should be administered in a way that does not leave the insured in a position which is less advantageous than if the uninsured motorist had been insured. *E.g., Taylor v. Great Central Insurance Co.,* 305 Minn. 446, 449, 234 N.W.2d 590, 591 (1975); *Brunmeier v. Farmers Insurance Exchange,* 296 Minn. 328, 208 N.W.2d 860 (1973).

▋▋▋▋ We conclude, therefore, that an uninsured motorist carrier's inchoate subrogation right must yield to the claimant's right to control her own personal injury action; and claimant, by settling with an insured tortfeasor for a *Pierringer* release, may thereby deprive the uninsured motorist carrier of its inchoate subrogation interest against the settling tortfeasor.

## II.

What, then, is the effect of State Farm's "consent to settlement" provision which reads: "THERE IS NO COVERAGE UNDER [UNINSURED COVERAGE] * * * FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY.*"

▋▋▋▋ As written, the clause is overbroad. To the extent the clause denies coverage for an insured who settles with an insured tortfeasor without the insurer's prior consent, we hold that the clause imposes an impermissible condition on unin-

sured motorist coverage contrary to the No-Fault Act and is invalid. To the extent, however, that the policy provision requires the insurer's prior consent to any settlement with the uninsured motorist tortfeasor, no undue interference with the insured's right to control her own lawsuit is involved, and we believe that the policy provision would be valid. *Craig v. Iowa Kemper Mutual Insurance Co.,* 565 S.W.2d 716 (Mo.Ct.App.1978); *Charest v. Union Mutual Insurance Co. of Providence,* 113 N.H. 683, 313 A.2d 407 (1973). Since this court has recognized the uninsured motorist carrier's subrogation right as a common law interest, we hold that, with or without an appropriate "consent to settlement" provision in the policy, the insured who intends to invoke his or her uninsured motorist coverage may not first settle with the uninsured motorist without the consent of the carrier.

If the "consent to settlement" clause is not enforceable here, State Farm asks that we protect its inchoate subrogation right by adopting a remedy similar to that fashioned in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983). In other words, State Farm urges that it be given the option to "buy" claimant's personal injury cause of action so it can perfect its subrogation interest and "recover from the insured tortfeasors both the damages for which they were responsible and those for which the uninsured motorist was responsible." We are not inclined to follow this suggestion. *Schmidt v. Clothier* involved underinsured motorist coverage, where the settlement dynamics are quite different, where the concern was that the underinsurer, because of maneuvering between the claimant and the insured tortfeasor could be placed "at an unfair disadvantage in which it had no control over the insured's right to settle but yet had to pay the difference between the settlement and the liability limits." *Schmidt* at 261. There is little likelihood of this kind of unfair disadvantage happening to the uninsured motorist carrier when the claimant makes a *Pierringer* settlement with an insured tortfeasor. An un-

fair disadvantage could, of course, occur when the claimant settles with the uninsured motorist, but this is one of the reasons we hold, as stated above, that the claimant who intends to invoke uninsured motorist coverage must obtain the carrier's consent to such a settlement with the uninsured motorist.

### III.

 Should the carrier at least be entitled to notice of any proposed settlement with insured tortfeasors? The trial court, in its helpful memorandum, found this to be the most troublesome issue, as do we. Here Galloway gave no notice, and we agree with State Farm, contrary to the court of appeals' view, that State Farm never waived any right to notice. We are not inclined, however, to impose a notice requirement for *Pierringer* settlements with insured tortfeasors. We see no need to do so, at least not for the kind of settlement used here when no unfair advantage is taken of the insurer. Therefore, we hold that Galloway's failure to give notice of her pending *Pierringer* settlements does not prevent her from invoking her uninsured motorist coverage. Having said this, we point out that this opinion does not deal with other types of settlements nor do we have before us recent changes in the No-Fault Act which may or may not have relevance. As a matter of prudence if not common courtesy, we would think, therefore, that claimants would want to keep their first-party insurance carrier apprised of settlement negotiations.

Affirmed.

COYNE, J., took no part in the consideration or decision of this case.