Joanne KLANG, Respondent,

v.

AMERICAN FAMILY INSURANCE GROUP, Appellant.

No. C2–86–1289.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Thomas F. Andrew, Brown, Andrew, Hallenbeck, Signorelli & Zallar, P.A., Duluth, for respondent.

Michael W. Haag, Donovan, McCarthy, Crassweller & Magie, P.A., Duluth, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a judgment granting partial summary judgment to respondent Joanne Klang and denying a motion for summary judgment by appellant American Family Insurance Group, and from a final judgment awarding Klang $809.75 plus interest, costs and disbursements. On appeal, American Family contends that Klang's claim for underinsured motorist benefits is barred because she settled with the underinsured tortfeasor without notifying it as required by the policy of insurance

and by *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). We agree and reverse.

## FACTS

On July 22, 1983, Klang's automobile was rear-ended by a vehicle driven by Jean Marie Benson. Benson was insured by State Farm Mutual Automobile Insurance Company under a policy that provided personal injury liability limits of $25,000 per person. Klang retained her present attorney, who negotiated a settlement with State Farm for the limits of Benson's policy. On June 19, 1984, Klang and her husband executed a complete release of Benson and her husband. No notice was given to American Family of the claim against the Bensons or of the eventual settlement with State Farm.

At the time of the accident, Klang was insured under an American Family policy that included underinsured motorist coverage. About a month after settlement was reached with the Bensons, Klang's attorney wrote to American Family requesting underinsured motorist benefits and advising it that Klang had settled with the Bensons and State Farm. American Family denied her claim because she had failed to give it notice of the pending settlement and had thus destroyed its subrogation rights.

Klang commenced this action to recover underinsured motorist benefits. Early in the proceedings, the trial court denied American Family's motion for summary judgment and granted Klang's motion for partial summary judgment, ruling as a matter of law that Klang's failure to notify American Family of her intent to settle with the underinsured tortfeasor did not bar her claim for underinsured motorist benefits. American Family's motion to amend the partial judgment so that it could pursue an immediate appeal was denied by the trial court in December 1985.

Trial commenced on April 10, 1986. On April 11, the jury returned a verdict of $45,009.75 in Klang's favor. The parties stipulated that the award should be reduced by the following sums already received by Klang: $25,000 from the underinsured tortfeasor's carrier under the terms of the settlement; $9200 from American Family for medical bills; $10,000 from American Family for wage loss. Judgment was entered on May 5, 1986 in the amount of $809.75.

■ American Family initially indicated to Klang in two letters that it would not appeal. No post-trial motions were filed by either party. American Family thereafter changed its position and filed timely notice of appeal.[1]

## ISSUE

Did the trial court err in concluding that settlement and release of an underinsured tortfeasor without prior notice to the insurer did not preclude the insured from recovering underinsured motorist benefits?

## ANALYSIS

Under *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), an underinsurer is entitled to notice of a tentative settlement with an underinsured tortfeasor and an opportunity to protect its potential subrogation rights. *Id.* at 263. It is undisputed that in this case American Family received no notice of Klang's pending settlement with the underinsured tortfeasors.

Klang argues that *Schmidt* does not apply in this situation because it involved underinsured motorist coverage and subrogation rights under Minn.Stat. § 65B.49, subd. 6(e), which was repealed in 1980. *See* 1980 Minn. Laws ch. 539, § 7 (effective April 12, 1980). Repeal of these mandatory offer provisions, however, did not change the nature of underinsured motorist coverage, which remains available by contract.

1. Klang has filed a motion to dismiss this appeal on the basis that correspondence by American Family constitutes a binding settlement. Based on our review of the record, we conclude that these communications do not constitute a valid and binding settlement. Nor do the facts establish that American Family should be estopped from pursuing this appeal. Klang's motion to dismiss is therefore denied.

*See Sobania v. Integrity Mutual Insurance Company,* 371 N.W.2d 197, 200 (Minn.1985); *Hoeschen v. South Carolina Insurance Co.,* 349 N.W.2d 833, 838 (Minn. Ct.App.1984), *aff'd,* 378 N.W.2d 796, 800 (Minn.1985). Nor should it affect the nature of an underinsurer's subrogation rights, which are now governed by common law.

Klang appears to argue that notice was not required because American Family had paid no benefits prior to release of the tortfeasor and therefore had no existing subrogation rights. As support for her position, she cites this court's decision in *State Farm Mutual Automobile Insurance Co. v. Galloway,* 354 N.W.2d 527 (Minn.Ct.App.1984), *aff'd* 373 N.W.2d 301 (Minn.1985). Examination of the supreme court's decision in *Galloway,* which neither party cites or discusses, exposes the flaws of this argument.

In *Galloway,* the supreme court concluded:

> [A]n uninsured motorist carrier's inchoate subrogation right must yield to the claimant's right to control her own personal injury action; and claimant, by settling with an insured tortfeasor for a *Pierringer* release, may thereby deprive the uninsured motorist carrier of its inchoate subrogation interest against the settling tortfeasor.

*Galloway,* 373 N.W.2d at 306. The supreme court found that there had been a "fair exchange"—although the insurer lost its inchoate subrogation rights, its exposure was limited by the *Pierringer* release to the several, instead of the joint, liability of the uninsured motorist. *Id.*

The insurer in *Galloway* then urged that it be allowed to protect its inchoate subrogation rights through a procedure similar to that set out in *Schmidt.* The supreme court rejected this suggestion, noting that the settlement dynamics differed significantly between cases involving *un*insured and *under*insured motorist coverage, and that in *Galloway,* where the insured made a *Pierringer* settlement with an insured tortfeasor, there was little likelihood that the uninsured motorist carrier could be placed at an unfair disadvantage. *Galloway,* 373 N.W.2d at 306. Nor was the supreme court "inclined * * * to impose a notice requirement for *Pierringer* settlements with insured tortfeasors" when it saw "no need to do so, at least not for the kind of settlement used here when no unfair advantage is taken of the insurer." *Id.* at 307.[2]

■ This case is readily distinguishable from *Galloway* because it involves underinsured, not uninsured motorist coverage and a general, not a *Pierringer* release. In a case such as this, *Schmidt* expressly holds that "the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect [its] potential [subrogation] rights by paying underinsurance benefits before release." *Id.,* 338 N.W.2d at 263. Notice is also required by Klang's policy with American Family, which provides that the insured "promptly" give the

---

**2.** *Galloway* also discusses the effect of "consent to settlement" provisions. It concludes that such clauses are invalid in cases where they act to deny coverage to an insured who settles with an insured tortfeasor without the insurer's prior consent because they unduly interfere with an insured's right to control her own lawsuit; in situations where an insured intends to settle with an *uninsured* motorist, however, prior consent must be obtained whether or not the policy contains an appropriate "consent to settlement" clause. *Galloway,* 373 N.W.2d at 306.

It should be noted that the policy in this case does not contain a typical "consent to settlement" clause. It merely includes a provision indicating that the insurer will not be bound by any settlement entered into without its consent; it does not require the insured to obtain that consent prior to settlement, nor does it deny coverage if consent is not obtained. It should also be noted that the issue here is *not* whether Klang was required to obtain the consent of American Family before settlement with the underinsured tortfeasor, but whether Klang was required to give American Family *notice* of the tentative settlement. Thus, Klang's reliance on *Royer v. Maryland Casualty Co.,* No. Civ. 5–78–27 (D.Minn. Mar. 12, 1979) (order of United States District court adopting February 21, 1979 Memorandum Decision and Recommendation of United States Magistrate), which interprets a policy purporting to exclude coverage if consent is not obtained prior to settlement, is misplaced.

insurer notice of an accident or loss and that the insured "do nothing after loss to harm [the insurer's subrogation] rights." Thus, notice was required in this case under the express holding of *Schmidt* and by the terms of the policy.

Since *Schmidt,* this court has decided at least two cases involving settlement with an underinsured tortfeasor without notice to the underinsured carrier. *See Siebels v. American Family Mutual Insurance Co.,* 374 N.W.2d 220 (Minn.Ct.App.1985); *Progressive Casualty Insurance Co. v. Kraayenbrink,* 370 N.W.2d 455 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Sept. 19, 1985). In *Kraayenbrink,* this court concluded that lack of notice was justified because the policy provisions requiring notice were ambiguous or nonexistent and in *Siebels,* such a policy provision was nonexistent. *See Kraayenbrink,* 370 N.W.2d at 460; *Siebels,* 374 N.W.2d at 222. Klang does not specifically allege that any particular provision in her policy is ambiguous, nor does she attempt to explain her failure to give American Family notice of her tentative settlement with the Bensons.

■ *Schmidt* does not specify the consequence of an insured's failure to give notice to its insurer of a pending settlement with an underinsured tortfeasor. American Family contends that the appropriate remedy is to preclude Klang from recovering underinsured benefits. The contract of insurance expressly provides such a remedy by requiring that notice be given after loss, that an insured "do nothing after loss to harm" the insurer's recovery or subrogation rights, and that failure to comply with the terms of the policy precludes suit against the insurer.

The remedy for lack of notice must also be equitable. Refusing to impose a notice requirement for *Pierringer* settlements with insured tortfeasors since no unfair advantage is taken of the insurer, the supreme court in *Galloway* stated:

[W]e hold that Galloway's failure to give notice of her pending *Pierringer* settlements does not prevent her from invoking her uninsured motorist coverage. Having said this, we point out that this opinion does not deal with other types of settlements * * *. As a matter of prudence if not common courtesy, we would think, therefore, that claimants would want to keep their first-party insurance carrier apprised of settlement negotiations.

*Galloway,* 373 N.W.2d at 307.

Unlike the situation in *Galloway,* there was no "fair exchange" in this case. Circumvention of *Schmidt* unfairly disadvantaged American Family by releasing the underinsured tortfeasors and by destroying any inchoate subrogation right American Family might have had.[3] Since Klang, as the insured, was in the best position to notify American Family of the tentative settlement with the Bensons, we conclude that the appropriate and only remedy is forfeiture of her right of action against American Family for underinsured motorist benefits, represented in this case by the judgment in the amount of $809.75.

### DECISION

The trial court's grant of partial summary judgment to Klang and its denial of summary judgment to American Family is reversed. As a matter of law, American Family was entitled to summary judgment because Klang's failure to notify it of the pending settlement with an underinsured tortfeasor precluded her from recovering underinsured motorist benefits. The money judgment should therefore be vacated.

Reversed.

---

**3.** The release states that the Bensons are "release[d] and forever discharge[d] * * * from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all

injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on" July 22, 1983.