**DAIRYLAND INSURANCE COMPANY,**
Respondent,

v.

**Patsy A. STARKEY, et al., Appellants.**

No. C5–94–876.

Court of Appeals of Minnesota.

Nov. 29, 1994.

Review Granted Jan. 25, 1995.

Terry J. Battaglia, Mahoney, Dougherty and Mahoney, Minneapolis, for respondent.

William D. Foster, William D. Foster & Associates, Minneapolis, for appellants.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and KLAPHAKE, JJ.

## OPINION

CRIPPEN, Judge.

In appellants' personal injury suit, the jury returned a special verdict finding an insured and an uninsured motorist jointly liable for appellants' injuries. Appellants subsequently settled with the insured motorist and then sought uninsured motorist benefits from respondent company for the damages attributable to the uninsured motorist. In respondent's declaratory judgment action, following its denial of coverage, the trial court held that appellants were not entitled to uninsured motorist benefits because such benefits would constitute an impermissible double recovery. We reverse.

## FACTS

Appellant Patsy Starkey sustained injuries in an automobile accident between a vehicle owned and driven by her father-in-law, and another vehicle owned and operated by Marjorie Erickson. Erickson's vehicle was insured by a policy with $100,000 per person and $300,000 per accident liability limits. The vehicle being driven by Starkey's father-in-law was not insured but Starkey had an insurance policy with Dairyland Insurance Company that provided uninsured motorist coverage.

Starkey and her husband brought a personal injury action against Erickson, who served a third-party complaint on Starkey's father-in-law. The trial court jury returned a special verdict finding Erickson 60 percent at fault and Starkey's father-in-law 40 percent at fault. The jury awarded Starkey $49,100 for her injuries and awarded her husband $1,800 for his loss of earnings, for a total of $50,900 in damages.

Before judgment was entered on the special verdict, the Starkeys settled their claim against Erickson for $48,400 in exchange for a *Pierringer* release. Then they filed a claim for uninsured motorist benefits with Dairy-

land for the damages attributable to Starkey's father-in-law. Dairyland denied coverage. The Starkeys demanded arbitration of their claim but Dairyland commenced this declaratory judgment action to determine its obligations under the policy.

The trial court granted summary judgment for Dairyland, holding that the Starkeys were precluded from collecting UM benefits as a matter of law. The court concluded that the Starkeys would receive an impermissible double recovery if they were allowed to collect UM benefits because their total compensation would exceed the damages determined by the jury. The Starkeys appeal from the summary judgment.

## ISSUE

Is a claimant entitled to collect uninsured motorist benefits when an insured joint tortfeasor has adequate liability insurance to pay the entire damage award and the claimant enters into a post-verdict settlement with the insured tortfeasor for less than the full amount of the verdict?

## ANALYSIS

There are no material facts in dispute and we review de novo the trial court's legal determination that the Starkeys are not entitled to uninsured motorist benefits.[1] *See Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### *State Farm v. Galloway*

A claimant with UM insurance can proceed in several ways to recover compensation for injuries she suffered in an automobile accident where there were multiple tortfeasors, some insured and some not.

■ (1) She can pursue her claim in a court action against the tortfeasors and then seek UM benefits under her policy if not fully compensated. Even if the jury assesses a portion of the claimant's damages to the

---

[1] Appellants have also argued on appeal that under the terms of the insurance policy respondent was not entitled to file this declaratory judgment action but instead was required to submit their dispute to arbitration. But appellants' argument is based on the arbitration clause in the original policy and ignores an amendatory

endorsement which provides that disputes will be submitted to arbitration only upon consent of both the claimant and the insurance company. By initiating this declaratory judgment action respondent has indicated that it does not consent to arbitration.

uninsured tortfeasors, the insured tortfeasors are jointly liable for the entire damage award and the claimant can seek full recovery from the insured tortfeasors without having to seek UM benefits from her insurer.

■ (2) She can collect UM benefits up to her policy limits and then pursue a court action against the insured tortfeasors if not fully compensated. The UM insurer would then have a perfected subrogation interest against both the insured and uninsured tortfeasors.

■ (3) She can settle with the insured tortfeasors and then, if not fully compensated, seek UM benefits from her insurer. *State Farm Mut. Auto. Ins. Co. v. Galloway*, 373 N.W.2d 301, 304 (Minn.1985).

The plaintiff in *Galloway* followed the third strategy, entering into *Pierringer* releases with the insured tortfeasors and then pursuing UM benefits for the damages attributable to the uninsured motorist. The UM insurer argued that by entering into *Pierringer* releases the claimant deprived the insurer of its subrogation rights against the settling tortfeasors, and that the claimant was required to first seek full recovery from the insured tortfeasors. The supreme court disagreed and held that the insurer's subrogation rights must give way to the claimant's right to control her own personal injury suit. *Id.* at 306.

Allowing the claimant to settle with the insured tortfeasors for *Pierringer* releases only exposes the UM insurer to precisely the portion of damages it agreed to cover. In a *Pierringer* settlement the claimant obtains that portion of the damages attributable to the settling tortfeasors, which only leaves the damages attributable to the uninsured motorist to be paid by the UM insurer. *Id.* at 305. While the insurer loses its subrogation claim against the insured tortfeasors, in exchange its exposure is limited to the several rather than the joint liability of the uninsured motorist. *Id.* at 306.

The insurer also argued in *Galloway* that the claimant might obtain an impermissible double recovery if permitted to collect UM benefits after settling with the insured tortfeasors. For example, if the claimant settled

with the insured tortfeasors for $71,000 and the UM arbitrator then determined that the claimant's actual damages are $70,000 and the uninsured motorist was 50 percent at fault, the claimant would then collect an additional $35,000, well in excess of determined damages. The supreme court dismissed this argument as well. In the stated hypothetical, the insured tortfeasors simply misjudged the value of the claims and paid too much for their releases. *Id.* at 305. Under established tort law, a nonsettling tortfeasor has no right to complain that the injured party will receive a "windfall" as a result of this type of settlement. *Id.* (citing *Shantz v. Richview, Inc.*, 311 N.W.2d 155, 156 (Minn. 1981)).

The insurer in *Galloway* argued that UM insurance is first-party coverage, putting the insurer in the position of the claimant and not the uninsured, nonsettling tortfeasor; as such, the insurer is entitled to complain if the claimant receives a double recovery. The supreme court acknowledged the logic in this position but specifically declined to adopt it. *Id.* Instead, the court held that the insurer's primary obligation is to pay benefits which the claimant would otherwise have received from the uninsured motorist. *Id.* In the context of a *Pierringer* settlement, the insurer is more analogous to a nonsettling tortfeasor, and like the nonsettling tortfeasor, cannot be concerned how much was paid to the claimant in a settlement. *Cf. Shantz*, 311 N.W.2d at 156. The insurer has no right to avoid its obligation to pay benefits because of the claimant's settlement. *Id.* ("[I]t would be inequitable to allow defendant, the nonsettling party, to profit from a settlement agreement between plaintiff and third-party defendant.")

The *Galloway* court acknowledged the possibility that the insured tortfeasors might have paid a portion of the damages attributable to the uninsured motorist in order to avoid the risk of joint liability for all damages, in which case the claimant would receive a double recovery upon subsequently collecting UM benefits. *Galloway*, 373 N.W.2d at 305 n. 2. But the court decided that it was unlikely that the insured tortfea-

sor would knowingly or willingly pay for damages that were already covered by UM insurance. *Id.* The court concluded that, in general, the presence of UM insurance did not lead to the distortion of settlement negotiations to afford the claimant an impermissible double recovery. *Id.*

## Application of *Galloway*

█ Although the *Pierringer* settlement occurred in *Galloway* before a trial on the claimant's personal injury suit, the Starkeys settled with Erickson after a verdict was rendered. Dairyland acknowledged at oral argument that *Galloway* would be controlling if Starkey and Erickson had settled at any time up to the point when the jury returned its verdict. But Dairyland maintains that the Starkeys were prohibited from settling their claim against Erickson for anything less than the full amount of the verdict without foregoing their right to collect UM benefits. We find no reason to permit this distinction of *Galloway*.

*Galloway* held that the insurer's subrogation rights must give way to the claimant's right to control her own personal injury suit, including the right to settle that suit. The right to settle includes not only the right to decide whether to settle and for how much but also the right to decide when to settle. Settlements avoid the uncertainty and expense of litigation. And post-verdict settlements eliminate the uncertainty of and need for post-trial litigation.[2]

Even though the Starkeys had obtained a verdict in their favor, that did not guarantee them recovery. The verdict was not reduced to judgment and was still subject to attack in post-trial motions and on appeal. Erickson's liability exposure was similarly threatened by post-trial litigation. Even after the jury returned its verdict, both parties had legitimate reasons to settle. Under *Galloway*, the Starkeys were entitled to settle their disputed claims against Erickson and are not precluded from seeking UM benefits by doing so.

Dairyland asserts that the Starkeys' settlement destroyed the company's subrogation rights against Erickson and argues that settlement of liability claims that prejudice the UM insurer's subrogation rights are not allowed. But *Galloway* held that the UM insurer's subrogation rights must yield to the claimants right to control her suit.

Dairyland also argues that the Starkeys cannot collect UM benefits because they settled with Erickson for less than the full amount of the verdict despite the fact that Erickson's liability insurance afforded ample coverage to pay all of their damages. But *Galloway* held that the claimant is entitled to UM benefits without first seeking full recovery from the insured tortfeasors. *See also Ketterling*, 415 N.W.2d at 109.

Dairyland also relies on the fact that UM coverage is first party coverage, rather than liability coverage, to support its position. *Galloway* explicitly rejected this distinction as a basis for the insurer to refuse to pay the settling claimant UM benefits.

Finally, Dairyland asserts that the Starkeys have manipulated this settlement in order to receive a double recovery. On its face, this settlement will not afford the Starkeys a double recovery. By the nature of a *Pierringer* release, Erickson has paid for nothing more than the portion of the damages attributable to her negligence, and the Starkeys have not received any compensation for the damages attributable to the unin-

---

**2.** Although Ketterling did not effect a *Pierringer* release but settled her claims post-verdict, we believe *Galloway* is controlling. * * * We also do not believe the fact that Ketterling's settlement was post-verdict rather than pre-verdict, makes any difference. At the time of the settlement Ketterling still risked losing her judgment and recovery against the tortfeasors * * *. In compromising her claims and accepting settlement she realized less than full compensation. She realizes full recovery only because she also received basic economic loss and uninsured motorist benefits from her own insurer.
*Ketterling v. American States Ins. Co.*, 415 N.W.2d 106, 109 (Minn.App.1987) *pet. for rev. denied* (Minn. Jan. 28, 1988) (discussing whether UM insurer lost its subrogation claim for benefits paid when claimant settled her dram shop action post-verdict for less than the full amount of the jury verdict.)

sured motorist. If, after receiving UM benefits, the Starkeys receive compensation in excess of their actual damages that is because Erickson paid too much for her release. Under *Galloway*, the insurer has no right to complain about this type of "windfall".[3]

There is the possibility of collusion between UM claimants and an insured tortfeasor in reaching their settlement agreement. A tortfeasor may agree to pay a portion of the uninsured motorist's damages to avoid joint liability for the entire verdict and also to afford the claimants a double recovery. But the possibilities for collusion also exist in connection with pre-verdict settlements. And the mere possibility of collusion is insufficient to deny UM benefits. *Galloway* explicitly considered whether the presence of UM coverage leads to the distortion of settlements and concluded that, in general, it did not. *Galloway* decided that the potential for distortion did not justify denying the claimant UM benefits.

There were legitimate reasons for both parties to enter into the post-verdict settlement in this case. There has been no showing that these reasons were pretextual nor has Dairyland produced any affirmative evidence of collusion between the Starkeys and Erickson. We do not decide whether the outcome of this case would be different if there had been a finding of collusion by the

trial court, nor do we decide what evidence would support such a finding.

Dairyland's motion to strike from the appellate record the copy of the *Pierringer* release and a letter from William D. Foster to Dairyland dated July 20, 1993 is granted; these documents were not presented to the court below. The contents of these documents played no part in our decision.

### DECISION

■ The trial court erred in granting Dairyland's motion for a summary, declaratory judgment. Starkey is not precluded from collecting uninsured motorist benefits because she entered into a post-verdict settlement with Erickson, exchanging a *Pierringer* release for payment of less than the full amount of the verdict.

**Reversed.**

■

---

3. There is no occasion on this appeal to decide how much the Starkeys are entitled to receive in UM benefits. We note that it is not certain that the Starkeys will in fact receive a "windfall". Both parties appear to accept the inference that the jury verdict in the Starkeys' personal injury action is the correct measure of the Starkeys' damages and the amount of fault attributable to the uninsured motorist. But that is not necessarily true.

In order to anticipate the amount of UM benefits the Starkeys are entitled to receive it will first be necessary to determine whether either party is collaterally estopped from attacking the jury verdict. The elements of collateral estoppel are:
1. The issue is identical to one in a prior adjudication;
2. There was a final judgment on the merits;
3. The estopped party was a party or in privity with a party to the prior adjudication; and

4. The estopped party was given a full and fair opportunity to be heard on the adjudicated issue.
*Parker v. MVBA Harvestore Systems*, 491 N.W.2d 904, 906 (Minn.App.1992). Dairyland was not a party to the original action. And the verdict in this case was never reduced to a final judgment. *See also City of Savage v. Varey*, 358 N.W.2d 102, 106 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 27, 1985) (commencing litigation over arbitrable claims may constitute waiver of contractual right to arbitrate but there is no waiver where litigation involves tort claims rather than contractual rights).

If the issues of damages or fault are re-litigated, the findings of the new fact finder will be the correct measure of the Starkeys' damages and the amount of fault attributable to the uninsured motorist. In this event, the Starkeys' initial settlement may constitute considerably less than full compensation as ultimately determined.