DAIRYLAND INSURANCE COMPANY,
Petitioner, Appellant,

v.

Patsy A. STARKEY, et al., Respondents.

No. C5–94–876.

Supreme Court of Minnesota.

Aug. 4, 1995.

Terry J. Battaglia, Mahoney, Dougherty &
Mahoney, Minneapolis, for appellant.

William D. Foster, Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

Respondent, Patsy Starkey, was injured while a passenger in a vehicle owned and operated by Frank H. Starkey, her father-in-law, when it was involved in a two-car accident. The driver of the other vehicle, Marjorie Erickson, was insured with a policy providing $100,000 per person and $300,000 per accident liability coverage. Patsy Starkey had uninsured motorist (UM) coverage under a Dairyland Insurance Company (Dairyland) policy which provided limits of $25,000 per person and $50,000 per accident.

Patsy Starkey and her husband brought a suit against Erickson for Starkey's injuries; Erickson then brought a third-party action against Frank H. Starkey, the uninsured motorist.[1] The case went to trial and the jury returned a verdict finding Erickson 60% at fault and Frank H. Starkey 40% at fault. Patsy Starkey's damages were set at $49,100, and damages of her husband, Frank E. Starkey, were set at $1,800, for a total verdict of

1. Frank H. Starkey died prior to trial and was not represented, and Dairyland was not a party to the action.

$50,900. The verdict was reduced to $49,-991.15 after Starkey's husband received collateral source offsets for wage losses paid by Dairyland.

Before judgment was entered on the verdict, Starkey agreed to accept $48,400 from Erickson in exchange for a *Pierringer* release.[2] Starkey then filed a claim for UM benefits under her Dairyland policy for the 40% fault attributed to the uninsured driver. Dairyland responded by offering to pay the "gap" between the jury verdict of $49,991.15 and $48,400, the amount Starkey received from Erickson. Starkey refused, claiming she was entitled to 40% of the verdict, or $20,360, based upon the allocation of fault. Dairyland denied liability and commenced a declaratory judgment action.

Upon submission of the matter to the trial court on Dairyland's motion for summary judgment, the court concluded that Erickson had sufficient liability coverage to pay the jury verdict and if Starkey were allowed to recover on the Dairyland policy as Starkey claimed, it would amount to an impermissible double recovery. The court, therefore, granted Dairyland's motion for summary judgment.

The court of appeals reversed, based on *State Farm Mut. Auto. Ins. Co. v. Galloway,* 373 N.W.2d 301 (Minn.1985), holding that a post-verdict settlement in exchange for a *Pierringer* release did not preclude Starkey from collecting UM benefits where there was no evidence of collusion. *Dairyland Ins. Co. v. Starkey,* 524 N.W.2d 491 (Minn.App.1994). Dairyland appeals. We reverse.

The issue presented for our review is whether Starkey is entitled to UM benefits after settling post-verdict with Erickson, an insured tortfeasor, for less than the verdict amount where there is sufficient liability insurance to satisfy the entire verdict.

■ On appeal from summary judgment where no material facts are in dispute and the only question is one of law, this court reviews *de novo.* *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

In *State Farm Mut. Auto. Ins. Co. v. Galloway,* 373 N.W.2d 301 (Minn.1985), we reviewed the rights of a claimant to pursue recovery for personal injury against three joint tortfeasors—two with liability coverage and one uninsured. Before liability and damages had been determined by a jury, claimant settled with the two insured tortfeasors and sought to invoke coverage under her UM carrier for that portion of the damages attributable to the uninsured motorist. *Id.* at 303. This court reviewed the three alternatives available to a claimant in pursuing a combination of insured and uninsured motorist benefits in a personal injury lawsuit: (1) proceed to trial and judgment in a district court action and then, if still not fully compensated, pursue an arbitration claim; (2) collect UM benefits either by settlement or arbitration, then continue with a tort action in which the UM carrier would have a perfected subrogation interest; or (3) settle with the insured tortfeasor and, if not fully compensated, then proceed with a UM claim in arbitration. *Id.* at 304. The claimant in *Galloway* chose the third option. *Id.*

In response to the UM carrier's contention in *Galloway* that an impermissible double recovery would occur if this were allowed, we held that by settling for *Pierringer* releases, the claimant limited her UM claim to cover only those damages attributable to the uninsured motorist. *Id.* at 305. If the insured tortfeasors misjudged their liability and paid too much for their releases, this "is not the kind of double recovery of which a cotortfeasor can complain." *Id.; see also Shantz v. Richview, Inc.,* 311 N.W.2d 155, 156 (Minn. 1980) (noting that the amount plaintiff received from the settling defendant "should be no concern of the nonsettling defendant").

Here, however, the situation is quite different. Starkey chose to pursue her arbitration claim against the UM carrier *after* the jury had returned a verdict determining liability and damages, and after her settlement with the insured tortfeasor for slightly less than the verdict, even though there was sufficient liability insurance to cover the verdict. This distinction from *Galloway* is critical. When

---

**2.** In *Frey v. Snelgrove,* 269 N.W.2d 918, 921–22 (Minn.1978) this court acknowledged the value of Pierringer releases. *See Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963).

Starkey settled with the insured joint tortfeasor, she knew what her damages were, she knew the apportionment of fault among the tortfeasors, and she knew there was sufficient liability coverage in the Erickson policy to cover her damages. As the trial court noted, Starkey could have received 100% of her entitlement from Erickson as a joint tortfeasor, but instead chose to accept only 95% "in an attempt to grab $20,000 more" from the UM carrier. This is not the purpose of the Minnesota uninsured motorist statutes.

Minnesota's no-fault automobile insurance laws are intended to relieve the economic distress of *uncompensated* victims of automobile accidents. Minn.Stat. § 65B.42(1) (1994) (emphasis added); *see also Schmidt v. Clothier*, 338 N.W.2d 256, 260 (Minn.1983). The acts are intended to prevent overcompensation and provide offsets to avoid duplicate recovery, Minn.Stat. § 65B.42(2) & (5), speed the administration of justice and ease the burden of litigation on the courts, *Schmidt*, 338 N.W.2d at 260, and place the claimants in the same position they would have been in had the tortfeasor had liability insurance. *Galloway*, 373 N.W.2d at 306; *Brunmeier v. Farmers Ins. Exchange*, 296 Minn. 328, 331–32, 334, 208 N.W.2d 860, 862, 864 (1973). None of these purposes are served by permitting the recovery Starkey now seeks against the UM carrier.

The fact that judgment had not been entered and both Starkey and Erickson were facing the uncertainties of post-trial motions and appeals, as Starkey argues, is unpersuasive. The risks of a jury verdict for Starkey and the insured tortfeasor had been removed and the unknowns so substantially reduced that it was by then clear that to permit Starkey to pursue the UM carrier for 40% of the jury verdict, in addition to her settlement with the insured tortfeasor for 95% of the jury verdict, amounted to a double recovery—a result not intended by Minnesota's UM scheme.

We therefore conclude that Starkey is not entitled to UM benefits after settling postverdict with the insured, when the insured had sufficient liability insurance to cover the entire verdict.[3]

Reversed.

---

**3.** We reach this conclusion on the basis of the purposes to be served by Minnesota's UM laws and not on the basis of any claim of collusion between Starkey and the insured tortfeasor, as alleged by the UM carrier.