Nancy E. **FLADAGER**, Appellant,

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY,**
Respondent.

No. C0–87–1169.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Robert A. Standke, Standke, Greene & Greenstein, Ltd., Minnetonka, for appellant.

Robert W. Plunkett, Stringer, Courtney & Rohleder, Ltd., St. Paul, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Nancy Fladager appeals from a summary judgment granted in favor of the respondent Farm Bureau Mutual Insurance Company. The trial court ruled that appellant was barred from claiming underinsurance benefits under the motor vehicle insurance policy issued to her by respondent because appellant had not given respondent proper notice of her intent to settle the claim against the underinsured tortfeasor. We affirm.

## FACTS

On December 14, 1980, appellant was a passenger in an automobile involved in a single vehicle accident. As a result of the accident, she received serious back injuries. Appellant was a named insured under a motor vehicle insurance policy issued by respondent. Between December 1980 and June 1983, respondent paid over $8,000 in medical bills and its policy limits for wage loss.

Part IV of the policy detailed the underinsured motor vehicle coverage. This section contained a "consent clause" which read:

THERE IS NO COVERAGE UNDER * * * [UNDERINSURED MOTOR VEHICLE COVERAGE]:

1. FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY.*

(Capitalized and emphasized in original.) In addition, the "conditions" section of the policy detailed respondent's right to recover its underinsurance payments:

3d. Under under-insured motor vehicle coverage:

(1) the right to recovery passes to *us* for the amount *we* pay; and

(2) upon payment *we* are entitled to an assignment of any judgment obtained by the injured *person* against the party liable for the *bodily injury;* and

(3) the injured *person* shall:

(a) execute any legal papers *we* need; and

(b) help *us* get our money back.

(Emphasis in original.)

Appellant's attorney wrote to respondent on June 3, 1983, and indicated the driver's liability coverage was inadequate to compensate appellant for her injuries. In addition, the attorney stated that appellant would claim underinsurance benefits under her policy. The relevant section of the letter stated:

It is increasingly clear that the liability coverage of * * * the driver of the vehicle, will be inadequate to cover the claims of my client and that we will be looking to Farm Bureau for additional coverage under the underinsured motorist provisions of [her] polic[y].

Respondent acknowledged receiving the letter and admitted that its response to the letter did not address the underinsured motorist coverage issue.

On January 31, 1984, six months after the June 3, 1983, letter, appellant settled

the claim against the driver of the vehicle in which she was a passenger and executed a release. She claimed the settlement and release were executed because she received no indication that respondent did not consent to the settlement. In a letter dated March 5, 1984, appellant's attorney notified respondent of the settlement.

In May of 1985, appellant demanded that respondent either commence negotiations regarding payment of underinsured motorist benefits or arbitrate the issue of damages. Respondent advised appellant it would do neither because appellant had failed to give proper notice of the settlement to respondent.

In February 1986, appellant brought a declaratory judgment action seeking payment of underinsurance benefits from respondent. Appellant claimed that the statements in the letters were sufficient notice of her intent to settle the claim against the driver. In March 1987, respondent brought a motion for summary judgment requesting that appellant be barred from recovering underinsurance benefits for lack of notice of the settlement and release. The motion was granted and summary judgment entered on May 28, 1987.

In an order accompanied by findings of fact and a detailed memorandum, the trial court held that the letters dated June 3, 1983, and March 5, 1984, were neither timely nor adequate and "did not operate as the legally required notice."

## ISSUE

Did the letters from appellant, dated June 3, 1983, and March 5, 1984, operate as notice to respondent of appellant's intention to settle a claim against the underinsured tortfeasor?

## ANALYSIS

The summary judgment was properly granted if there was no issue of material fact before the trial court and if it properly interpreted the applicable law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987); *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

The parties agree that the June 1983 and March 1984 letters were delivered to respondent. However, they disagree as to the legal effect of the letters. Delivery of the March 1984 letter occurred after execution of the settlement and release in January 1984. Consequently, the trial court ruled that appellant "did not give the legally required 30 day notice prior to her settlement with the third party tortfeasor." We must agree. Our review, therefore, is limited to the timeliness and the adequacy of the June 1983 letter.

Initially, appellant questioned whether the policy terms required that notice of any kind had to be given to respondent.[1] We must resolve this question against appellant. Clearly, under the holding of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), notice is required. Inasmuch as *Schmidt* was released in September of 1983 and the settlement here did not occur until January of 1984, appellant should have followed the procedure set out in *Schmidt*.

Appellant next contends that, even assuming notice was required, timely and adequate notice was, in fact, given to respondent in appellant's June 1983 letter. Certainly, we agree that if the June letter was adequate, it was timely. Therefore, the adequacy of the notice becomes the determining factor in this case.

The trial court found the notice to be inadequate and we must agree. The June 1983 letter does not sufficiently indicate that appellant was intending settlement with the tortfeasor. The language clearly informs the reader that the tortfeasor's insurance coverage is inadequate to compensate appellant for her injuries.

---

1. The "consent clause" would clearly have required notice of a tentative settlement to respondent. Appellant conceded at oral argument that even assuming the "consent clause" was invalid, she recognized that she was required to give notice of settlement to respondent. However, in the event that any question regarding the notice requirement may remain, we will address it.

In addition, the words indicate that appellant will seek underinsurance benefits at a future date. However, there is no language which indicates that appellant contemplates settlement with the tortfeasor.

Finally, we must address the consequences which should follow for each party here. When timely and adequate notice of a tentative settlement with the tortfeasor is given, the underinsurer is provided with a grace period during which it may itself pay underinsurance benefits to its insured prior to release of the tortfeasor, and thereby protect its potential subrogation rights. *Schmidt* at 263. During the "grace period," the underinsurer may determine whether the tortfeasor has sufficient assets to warrant a subrogation action. Where there are adequate assets, the underinsurer may pay underinsurance benefits to the insured before release of the tortfeasor and preserve its subrogation rights. Alternatively, if the underinsurer determines that a subrogation action would be ineffective, it may allow the grace period to expire and permit the settlement and release between the insured and the tortfeasor. *Id.*

 Respondent has lost its right to determine whether a subrogation action should be brought. Such loss is a substantial one. After execution of the settlement and release, respondent determined that several thousand dollars could have been recovered from the tortfeasor. Respondent was, therefore, prejudiced because its right of subrogation was extinguished by the settlement and release. We believe an equitable remedy in this case must be consistent with the decision in *Klang v. American Family Insurance Group*, 398 N.W. 2d 49 (Minn.Ct.App.1986). In that case the insured settled with the tortfeasor without giving the notice expressly required by the policy. The underinsurer, consequently, lost its subrogation rights. This court concluded, because the insured was in the best position to notify the insurer of the tentative settlement with the tortfeasor, that the appropriate remedy was forfeiture of her right of action against the insurer for underinsured motorist benefits. Despite

our recognition of the harshness of this remedy, we feel compelled to reach the same conclusion with regard to appellant's action here. In September 1983, appellant should have re-examined her June 1983 "notice" in light of the holding in *Schmidt*. This re-examination would have indicated to appellant, we believe, that by any standard (pre-*Schmidt* or post-*Schmidt*), the June "notice" to respondent was inadequate.

### DECISION

The June 1983 letter did not give respondent notice of a tentative settlement. The January 1984 settlement with the tortfeasor precluded respondent from assessing the case and protecting its subrogation rights. Therefore, appellant forfeited her right of action against respondent for payment of underinsured motorist benefits.

Affirmed.