**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Respondent,

v.

**Eleanor C. BAUMANN, et al.,**
Appellants.

**No. CX–89–616.**

Court of Appeals of Minnesota.

Sept. 12, 1989.

Review Granted Nov. 22, 1989.

Mark C. Vandelist, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for respondent.

Mary C. Ivory, Paul J. Phelps, Thomas J. Lyons & Associates, St. Paul, for appellants.

Heard, considered and decided by NORTON, P.J., and RANDALL and MULALLY,* JJ.

* Acting as judge of the Court of Appeals by ap-

## OPINION

NORTON, Judge.

Appellants Eleanor and Anthony Baumann appeal from a judgment in which the trial court granted respondent American Family Insurance Company's motion to quash arbitration. The trial court held that appellants lost their right to underinsurance coverage because they had failed to give sufficient notice of their intent to settle with the tortfeasor as required by *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). The trial court further held that respondent did not waive the *Schmidt* notice requirement. We affirm.

## FACTS

This appeal arises from an automobile accident which occurred on May 21, 1982. The car Eleanor Baumann was driving was struck by a car driven by Carol Weierke. Eleanor Baumann sustained permanent injuries as a result of this accident. Carol Weierke carried a policy of automobile liability insurance with State Farm Insurance with liability of $25,000/50,000. Eleanor Baumann had a policy of automobile liability insurance with American Family which contained an underinsured motorist provision.

In August 1982, a lawsuit was commenced by the Baumanns against Weierke. On December 5, 1983, the attorney for the Baumanns made a demand on State Farm Insurance for Weierke's policy limits of $25,000. On December 14, 1983, the Baumanns' attorney sent a letter to American Family. The letter stated in part:

It has now become apparent that the underinsured motorist coverage will be resorted to * * *

This is to notify you that a summons and complaint was served on the defendant Carol Ann Weierke on August 18, 1982 and we enclose a copy. She was insured in State Farm Insurance Companies and * * * her policy contained limits of $25,000/100,000. We have made a demand

pointment pursuant to Minn.Const. art. VI, § 2.

for the policy limit of $25,000 and we enclose a copy of that letter of demand. Please inform us if there is any other information that you will require in connection with the underinsured motorist coverage.

The demand letter to State Farm states that Mrs. Baumann's damages appear to be in the area of $100,000 and that they are demanding the policy limit of the State Farm policy. The attached summons and complaint also stated that the Baumanns claimed damages in excess of $50,000.

State Farm sent a check for $25,000 to the Baumanns' attorney on December 28, 1983. This check was eventually cashed sometime after February 8, 1984. The Baumanns' attorney did not inform American Family that State Farm had tendered $25,000 or that the Baumanns would accept the $25,000. Nor did American Family ask for any more information from the Baumanns' attorney.

The Baumanns' attorney sent another letter to American Family on November 5, 1984. In this letter the attorney stated, "As you know, we settled with State Farm Insurance Company for the full amount of their policy limit of $25,000." In the same letter, American Family's offer of $5000 was rejected and arbitration of the underinsurance coverage was requested.

Rather than proceeding with underinsured arbitration at this time, the Baumanns commenced an action against American Family on December 26, 1984. In the answer to the Baumanns' complaint, American Family alleged that the Baumanns' complaint failed to state a claim upon which relief can be granted American Family affirmatively alleged that the Baumanns failed to meet the threshold requirement in the Minnesota No-Fault Insurance Act; that any injuries sustained by Eleanor Baumann were not caused by the negligence of Carol Weierke; and that if the Baumanns are entitled to recovery, then American Family is entitled to offset the amount that the Baumanns received from their no-fault insurance carrier. American Family did not affirmatively allege that it failed to receive adequate notice pursuant

to the terms of the policy or pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983).

In a letter dated February 17, 1986, American Family reoffered the $5000 and asked for a counteroffer. No further response was received by the Baumanns' attorney. In 1987, the Baumanns dismissed their attorney and hired new counsel. In 1988, the Baumanns' new counsel and American Family discussed possible arbitration of the dispute. American Family said it would not discuss arbitration until the Baumanns dismissed the suit against it. The Baumanns' suit against American Family was then dismissed without prejudice.

In August 1988, American Family brought an action to quash arbitration. American Family claimed that the December 14, 1983 notice was defective under *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). The trial court found that the notice was defective and quashed arbitration. The court also held that American Family had not waived, and is not estopped from asserting, the notice requirement.

## ISSUES

I. Did the Baumanns give notice as required under *Schmidt v. Clothier*, prior to settling with the underinsured tortfeasor?

II. Did American Family waive, or is it estopped from asserting, the notice requirement?

## ANALYSIS

### I.

■ The trial court ruled that as a matter of law the letter sent to American Family in December 1983 was not sufficient notice of settlement with the underinsured tortfeasor as required by *Schmidt v. Clothier*. This court is not bound by the trial court's decision on a question of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

The trial court ruled that the Baumanns had not given notice of intent to settle, but

rather had notified American Family that a demand had been made for the policy limits. The trial court's decision was based on *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983); *Klang v. American Family Insurance Group*, 398 N.W.2d 49 (Minn.Ct. App.1986); and *Fladager v. Farm Bureau Mutual Insurance Co.*, 414 N.W.2d 551 (Minn.Ct.App.1987). We agree that notice of settlement with the tortfeasor was lacking in this case, and therefore, under *Schmidt*, appellants are barred from seeking underinsurance.

In *Schmidt*, the supreme court held that the injured insured person must give notice to the underinsurance carrier of *potential settlement* with the underinsured tortfeasor so that the underinsurer is able to protect its subrogation right. *Schmidt*, 338 N.W.2d at 263. *Schmidt* requires a 30–day grace period after a written notice of the tentative settlement agreement before an injured party can settle with a tortfeasor. *Id.* The equities to be balanced in having this notice requirement are:

> those between the underinsurer, which has paid benefits, and the underinsured tortfeasor, who has not paid for the damages he or she has caused.

*Id.* at 262.

In having notice of a tentative settlement agreement and a 30–day grace period, the insurance company is given time to evaluate relevant factors such as:

> the amount of the settlement, the amount of liability insurance remaining, if any, the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation, the total amount of the insured's damages, and the expenses and risks of litigating the insured's cause of action.

*Id.* at 263.

This court has applied *Schmidt* in several cases. We have held that where no notice was given to the underinsured carrier prior to the eventual settlement with the tortfeasor, the insured lost her rights to her underinsured benefits. *Klang v. American Family Insurance Group*, 398 N.W.2d 49 (Minn.Ct.App.1986). In *Klang*,

the injured insured party received the liability limits of the tortfeasor. However, no notice was given to the underinsured carrier of this settlement.

In a later case, this court again held that the injured insured had forfeited her underinsured motorist benefits by failing to give adequate notice to the insurance company, where the insurance company was prejudiced by the insured's actions. *Fladager v. Farm Bureau Mutual Insurance Co.*, 414 N.W.2d 551 (Minn.Ct.App.1987). In *Fladager*, the underinsurance carrier was informed that the tortfeasor's liability coverage was inadequate to compensate the injured insured for her injuries. The letter to the underinsurer stating that the injured party would claim underinsurance benefits under her policy stated:

> It is increasingly clear that the liability coverage of * * * the driver of the vehicle, will be inadequate to cover the claims of my client and that we will be looking to Farm Bureau for additional coverage under the underinsured motorist provisions of [her] polic[y].

*Id.* at 552. Six months after sending this letter, the injured party settled with the tortfeasor. Fladager claimed that she settled and released the tortfeasor because she received no indication that the insurance company did not consent to settlement.

This court held that the letter did not sufficiently indicate that the injured party was intending settlement with the tortfeasor. *Id.* at 553. This court said:

> The language clearly informs the reader that the tortfeasor's insurance coverage is inadequate to compensate appellant for her injuries. In addition, the words indicate that appellant will seek underinsurance benefits at a future date. *However, there is no language which indicates that appellant contemplates settlement with the tortfeasor.*

*Id.* at 553–54 (emphasis added).

In *Fladager*, the insurance company determined that several thousand dollars could have been recovered from the tortfeasor. This court said that the appropriate remedy was forfeiture of the injured

party's right to underinsured motorist benefits, because the insurance company lost its subrogation right and the possible recovery of several thousand dollars from the tortfeasor. *Id.* at 554.

This court again dealt with the notice requirement in *Arney v. American Family Insurance*, 429 N.W.2d 271 (Minn.Ct.App. 1988). In *Arney*, no settlement offers were made or received by the injured party. The injured party did send a letter to American Family Insurance stating that:

> [I]n the event of a settlement for [the tortfeasor's] policy limits or a judgment in excess of $50,000, we will be looking to your company for satisfaction under the underinsured motorist clauses.

*Id.* at 272. This court held that notice of commencement of an action to an underinsurer by the insured would require intervention in the action by the underinsured carrier *absent any settlement offers. Id.* at 273. The underinsured carrier knew of the commencement of the tort action but did not participate in the trial. We held that the notice of the commencement of the litigation was sufficient under the insurance contract, and that no *Schmidt* notice requirement was required prior to a jury verdict. *Id.*

While this is a close question, and it is clear that the above cited cases are all distinguishable from the present case, we hold that the December 1983 letter did not give notice of intent to settle with the tortfeasor as required under *Schmidt.*

The notice given in the present case is somewhat more specific than the notice given in *Fladager;* however, it is also fatally defective because there is no language indicating that the Baumanns contemplate settlement with the tortfeasor. There is merely a statement that they have made a demand and that if the demand is met they will still seek underinsured benefits. Furthermore, *Arney* does not help the Baumanns' claim because this case involves a settlement, and not a jury verdict as in *Arney*, where notice of commencement of an action was sufficient to collect underinsured benefits pursuant to a jury verdict.

Because American Family has lost its subrogation rights against the tortfeasor, and the Baumanns could have prevented this by giving notice, we hold that the Baumanns have forfeited their right to collect underinsurance. *See Klang*, 398 N.W.2d at 52 (circumvention of *Schmidt* unfairly disadvantages insurer by destroying an inchoate subrogation right).

## II.

The Baumanns next claim that even if they did not give adequate notice of their intent to settle with the tortfeasor, American Family has waived this requirement or should be estopped from asserting it. At no point until the motion to quash in July 1988, did American Family say that notice pursuant to *Schmidt* was inadequate.

Even though American Family did not make known its intention to challenge the sufficiency of the *Schmidt* notice for four years, the Baumanns had already settled with the tortfeasor and American Family had already lost its rights to subrogation by the time notice was given to American Family. We believe that once a settlement is made and notice of settlement is then given to the insurer for the first time, the insurance company's action is moot. It would have been impossible for American Family to intentionally relinquish a known right, because it had already lost its subrogation right. Accordingly, we hold that American Family did not waive, nor is it estopped from asserting, the *Schmidt* notice requirement.

## DECISION

The trial court's decision to quash arbitration is affirmed; appellants are barred from pursuing underinsured coverage.

Affirmed.