AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent,

v.

Eleanor C. BAUMANN, et al., Petitioners, Appellants.

No. CX–89–616.

Supreme Court of Minnesota.

Aug. 31, 1990.

Mary C. Ivory, Lyons Sawicki & Associates, P.A., St. Paul, for appellants.

Mark L. Vandelist, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for respondent.

COYNE, Justice.

At issue here is the adequacy of an insured's notice to her underinsurer of a proposed or tentative settlement which would prevent the accrual of the underinsurer's right of subrogation. The district court ruled that the insured had forfeited her rights under the underinsured motorist coverage of her automobile insurance policy, and the court of appeals affirmed. We reverse.

On May 21, 1982 Eleanor Baumann was injured in a collision with a vehicle operated by Carol Ann Weierke under circumstances which left little doubt of Weierke's liability. On December 14, 1983, about 16 months after she had commenced an action against Weierke, Baumann's then lawyer wrote to the claims manager of American Family Insurance Group, saying that it had "become apparent that the underinsured motorist coverage will be resorted to due to the extensive damages as a result of the accident." The letter notified American Family of the institution of the action against Weierke and of the demand for her liability insurance limits:

> This is to notify you that a summons and complaint was served on the defendant Carol Ann Weierke on August 18, 1982, and we enclose a copy. She was insured in State Farm Insurance Companies and we are informed by Mr. Ronald D. Sampson, Field Claims Specialist, that her policy contained limits of 25/100,000. We have made a demand for the policy limit of $25,000 and we enclose a copy of that letter of demand.

> Please inform us if there is any other information that you will require in connection with the underinsured motorist coverage.

The attached demand letter contains a reference to an earlier telephone conversation with the State Farm field claims specialist and includes a detailed description of Mrs. Baumann's injuries, medical expenses, and wage loss. Enclosed with the letter were reports of her primary attending physician, her orthopedic surgeon, and her prosthodontist. Also attached was a copy of the report of the physician who had examined Mrs. Baumann on behalf of American Family; its inclusion intimates that Mrs. Baumann's injuries were not minor.

American Family made no response. Two weeks later, on December 28, 1983, State Farm tendered its policy limits, but although the draft was held and was not negotiated until sometime in February 1984 when the Baumanns released Weierke from liability, neither Baumann nor her counsel

gave American Family written notice of the tender until November 5, 1984. Counsel's letter of that date indicates both that American Family had been earlier advised of the settlement and that there had been some prior negotiations for settlement of the underinsured motorist claim. Baumann brought an action against American Family, and American Family interposed a general denial together with an allegation that the complaint failed to state a claim upon which relief could be granted. More than three years elapsed before there was any significant activity in the matter. Following the death of Baumann's counsel, her new lawyer expressed a preference for arbitration. At American Family's suggestion the parties entered into a stipulation for dismissal of the pending action and American Family immediately named an arbitrator. A few months after dismissal of the insured's action American Family successfully moved to quash arbitration. The court of appeals affirmed. *American Family Mut. Ins. Co. v. Baumann*, 445 N.W.2d 274, 278 (Minn.App.1989).

■ An insurer's right of subrogation is an equitable right long recognized in Minnesota. *E.g., Bacich v. Homeland Ins. Co. of America*, 212 Minn. 375, 376, 3 N.W.2d 665 (1942). Although that right accrues only upon payment of the insurer's contractual obligation, in *Schmidt v. Clothier*, 338 N.W.2d 256, 262 (Minn.1983), this court declared that an insurer's potential right of subrogation against an underinsured motorist was also entitled to protection. That protection was to be provided by 30 days' written notice of the insured's "tentative settlement agreement" with the tortfeasor and the tortfeasor's insurer, notice which would give the underinsurer an opportunity to protect its potential right of subrogation by paying underinsurance benefits before release of the tortfeasor. If, within the 30–day period, underinsurance benefits were paid and the tortfeasor notified, the subsequent release of the tortfeasor would not defeat subrogation. *Travelers Indemnity Co. v. Vaccari*, 310 Minn. 97, 103, 245 N.W.2d 844, 848 (1976). If the parties could not agree on the existence or extent of underinsurance benefits

due, the underinsurer could, if it deemed the right of subrogation of sufficient value, substitute its payment to the insured in an amount equal to the tentative settlement. If, on the other hand, enforcement of the right of subrogation was unlikely, the underinsurer could let the 30–day "grace period" expire, permitting the insured to enter into the settlement agreement and to release the tortfeasor, destroying any possibility of subrogation. *Schmidt*, 338 N.W.2d at 263. In other words, *Schmidt* requires 30 days' written notice before the insured releases an underinsured tortfeasor in order to give the underinsurer suitable opportunity to protect its potential right of subrogation if it chooses to do so.

■ The question before us, then, is whether the insured's letter of December 14, 1983, afforded the underinsurer suitable opportunity to protect its interest. We believe that it did. Certainly, the letter did not inform American Family that the insured and State Farm, the tortfeasor's insurer, had entered into a settlement agreement contingent upon American Family's decision whether to preserve its potential right of subrogation by substituting its draft for that of State Farm. The letter does, however, notify American Family not only that the insured considers the tortfeasor's liability insurance inadequate to fully compensate her for her injuries and that she will resort to her underinsured motorist coverage to make up the shortfall but also that the insured has made a demand for payment of the tortfeasor's policy limits of $25,000, making quite clear her intention to settle her action against the tortfeasor if her demand was met.

We are not unaware that a demand for the limits of the tortfeasor's liability insurance is frequently interjected into settlement negotiations, but the demand letter attached to the insured's letter of December 14, 1983 refers to an earlier conversation and suggests that both parties recognize that liability is not a significant factor in their negotiations and that the settlement would turn on damages. In short, this was not a pro forma demand for the payment of policy limits but a demand in-

tended to command the serious consideration of the tortfeasor's insurer. That it succeeded is evidenced by the prompt issuance of State Farm's draft in the amount of its policy limits.

Apparently the insured's lawyer was under the impression that the letter met the notice requirement of *Schmidt*. Why else would he have delayed negotiating State Farm's draft until more than six weeks after the notification of December 14, 1983. Apparently American Family, too, considered that letter adequate notice of an intended settlement with the tortfeasor, perhaps because American Family had paid more than $18,000 in basic economic loss benefits and it had in its file the report of a physician who had examined Mrs. Baumann on its behalf (a copy of which the insured had included in its demand letter to State Farm). American Family attempted to negotiate a settlement of the claim for benefits pursuant to the underinsured motorist coverage, making an offer and requesting a counteroffer—all without any mention of inadequate notice of the settlement with the tortfeasor. Even when the insured initiated an action on the policy, American Family did not plead the affirmative defense of forfeiture by reason of release of the tortfeasor without notice.[1] Almost four more years elapsed before the subject of forfeiture was broached.

American Family excuses its failure to raise the question of forfeiture before it moved to quash arbitration in September of 1988 by asserting that American Family could not be expected to foresee the later decisions of the court of appeals in *Klang v. American Family Ins. Group*, 398 N.W.2d 49, 52 (Minn.App.1986), and *Fladager v. Farm Bureau Mutual Ins. Co.*, 414 N.W.2d 551 (Minn.App.1987). American Family correctly observes that we did not specify in *Schmidt* the consequence of an insured's failure to give 30 days' written notice to its underinsurer of a tentative settlement agreement with an underinsured tortfeasor. Neither does the

*Schmidt* opinion specify the contents of that notice nor does it describe what constitutes a "tentative settlement agreement" with any particularity. If American Family may be excused for its failure to foresee that the absence of notice or defective notice would justify forfeiture of the underinsured motorist coverage, there seems little reason to require prescience of the insured.

American Family commends to us the decisions of the court of appeals in *Klang* (lack of notice results in forfeiture), 398 N.W.2d at 52, and *Fladager* (inadequate notice results in forfeiture), 414 N.W.2d at 554. In *Klang*, however, the insured had given American Family no notice of either her claim against the tortfeasor or her settlement with the tortfeasor's insurer until about a month after the tortfeasor's release. 398 N.W.2d at 50. In *Fladager* the insured advised her underinsurer that she regarded the limits of the tortfeasor's liability insurance as inadequate to fully compensate her for her damages and she stated that she would be looking to Farm Bureau's underinsurance coverage. 414 N.W.2d at 552. The letter contains no mention of a pending action against the tortfeasor and gives no indication that a settlement was in the offing or even that settlement negotiations were underway. *Id.* The insured notified the underinsurer of the settlement about three months after release of the tortfeasor. *Id.* at 553. Moreover, the underinsurer not only had lost its right to determine whether a subrogation action should be brought but had also demonstrated prejudice by showing that it could have recovered several thousand dollars from the tortfeasor had its potential right of subrogation not been extinguished by settlement and release. *Id.* at 554.

Historically this court has exhibited considerable reluctance to declare a forfeiture of insurance benefits as a consequence of the insured's breach of the policy provisions absent a showing that the insurer has

---

1. American Family's answer included an allegation that the complaint failed to state a claim on which relief could be granted. While that allegation was sufficient to raise the policy require- ment that the underinsured motorist claim be arbitrated, it was not sufficient to preserve the affirmative defense of forfeiture. Minn.R.Civ.P. 8.03.

been prejudiced thereby.[2] American Family has never suggested that it has been prejudiced in any way by its inability to enforce subrogation against this tortfeasor. Even though the insured did not notify American Family of State Farm's tender of its policy limits, the information she provided and her request that American Family advise her if it required additional information, coupled with the information already in American Family's possession, imposed on American Family the obligation to respond—if only to tell its insured that if she released the tortfeasor without giving American Family 30 days' written notice of any settlement agreement she might make with State Farm, she would be deemed to have forfeited any entitlement to underinsured motorist benefits. The 30-day notice requirement set out in *Schmidt* was not intended as a technical snare for unwary insureds.

■ Henceforth, the notice required of the insured shall be 30 days' written notice of a settlement agreement which is contingent upon the decision of the injured complainants' underinsurer whether to preserve its potential right of subrogation either by paying underinsured motorist benefits or by substituting its draft for that of the tortfeasor's liability insurer. The notice shall identify the insured, the tortfeasor and the tortfeasor's insurer and shall disclose the limits of the tortfeasor's automobile liability insurance and the agreed upon amount of the settlement. Absent the required 30-day written notice, release of the tortfeasor shall be deemed prejudicial to the underinsurer. That presumption of prejudice shall be rebuttable, but the burden of demonstrating by a preponderance of the evidence the absence of prejudice shall be borne by the insured. An insured's failure to sustain that burden of proving a lack of prejudice to the insurer shall result in forfeiture.

Reversed.

**2.** *See, e.g., Ryan v. ITT Life Insurance Corp.,* 450 N.W.2d 126 (Minn.1990) (whether insurer prejudiced by untimely notice of claim); *Mitchell v. Equitable Life Assurance Soc.,* 310 Minn. 219, 245 N.W.2d 618 (1976) (insurer prejudiced by late proof of disability); *Reliance Ins. Co. v. St. Paul Ins. Co.,* 307 Minn. 338, 239 N.W.2d 922 (1976) (delay in notice of claim did not prejudice professional liability insurer).