**John T. BEHRENS, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Appellant.**

**No. C6–94–577.**

Court of Appeals of Minnesota.

Aug. 30, 1994.

Review Denied Oct. 14, 1994.

Todd S. Lundquist, Lundquist Law Offices, Mankato, for appellant.

Michael G. Wright, Simmonds, Simmonds & Wright, Mankato, for respondent.

Considered and decided by NORTON, P.J., and RANDALL and SCHULTZ,* JJ.

## OPINION

RANDALL, Judge.

After being injured in a car accident, respondent John T. Behrens entered into a liability settlement with the tortfeasor without providing notice to appellant American Family Mutual Insurance Company, Behrens's underinsurance carrier, pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256, 262–63 (Minn.1983). At the time of the settlement, respondent was not contemplating bringing a claim for underinsurance benefits. Respondent subsequently commenced this action against appellant seeking underinsurance benefits. The trial court made alternative rulings, subject to appellate review. First, the trial court concluded that respondent's failure to provide *Schmidt* notice in this case did not result in the forfeiture of a claim for underinsurance benefits. In the alternative, the trial court held that if a *Schmidt* notice was required, respondent has forfeited his claim for underinsurance benefits because he failed to rebut the presumption that American Family was prejudiced by the lack of notice as set out in *American Family Ins. Co. v. Baumann*, 459 N.W.2d 923, 926–27 (Minn.1990). We affirm in part and reverse in part.

## FACTS

On September 11, 1985, an automobile accident occurred between a vehicle driven by respondent John T. Behrens and a vehicle driven by Rhonda A. Whiteman. The accident was caused by Whiteman's negligence. Whiteman, the tortfeasor, had a policy of insurance for liability coverage with Economy Fire & Casualty. The liability limit of the policy was $25,000. On September 6, 1988, respondent Behrens entered into a settlement with Whiteman and her insurer, whereby respondent fully released Whiteman and her insurer from all claims in exchange for a payment of $7000.

At the time of the accident, respondent carried his own policy of insurance with appellant American Family Mutual Insurance Company for underinsured motorist benefits in the amount of $100,000. Appellant was not given prior notice of the $7000 liability settlement between respondent and Whiteman and Whiteman's insurer. At the time of the liability settlement with the tortfeasor, respondent Behrens claims he had no intention of pursuing a claim for underinsured benefits, as his damages (at that time) did not exceed the tortfeasor's liability policy limits of $25,000.

Before the settlement, appellant American Family had been actively involved in monitoring respondent's medical status. As of August 9, 1988, Dr. E. Lawrence Markey, a doctor hired by appellant, concluded that respondent had achieved maximum medical improvement and suggested respondent had a permanent partial impairment of 3.5 percent. Based upon the medical information available at the time of the liability settlement in September of 1988, appellant placed a "value" on respondent's injuries in the range of $10,000 to $12,000.

Respondent's medical condition remained relatively constant until the end of 1990, when he experienced the onset of acute symptoms. In the latter part of January 1991, respondent was diagnosed with acute herniated cervical disc, which later required surgery. Dr. Gene E. Swanson opined that the disc was injured due to the car accident in September of 1985, and with the passage of time the disc ruptured. Before December of 1990, no one had discussed, considered, or recommended surgical treatment of any kind for Behrens.

In July of 1991, almost three years after settling with the tortfeasor, respondent commenced an action against appellant American

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Family claiming that he was entitled to underinsured motorist benefits. Appellant defended on the grounds that respondent had failed to comply with the notice requirements of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), thereby prejudicing appellant. The parties agree that as of the time of trial, respondent's claimed damages as a result of the auto accident were $37,000, an amount exceeding the tortfeasor's liability limits. The parties also agree that the value of respondent's underinsured claim, if viable, is $12,000.

The trial court concluded that at the time of the 1988 settlement, the vehicle operated by tortfeasor Whiteman was not an "underinsured motor vehicle" because respondent's damages (at that time) were not in excess of the liability policy limits and therefore, respondent had no right (at that time) to underinsured benefits. As such, the trial court concluded, appellant American Family had no right (at that time) of subrogation to protect. Thus, the trial court concluded that respondent Behrens was not required to provide *Schmidt* notice of the pending liability settlement to appellant American Family, and Behrens' failure to do so did not result in his forfeiture of underinsurance benefits.

The trial court concluded, in the alternative, that if this court determines on appeal that notice was required, then the provisions of *American Family Ins. Co. v. Baumann*, 459 N.W.2d 923 (Minn.1990) apply. Under *Baumann*, there is a rebuttable presumption that appellant American Family was prejudiced by the lack of notice of the pending settlement with the liability carrier. *Id.* at 927. The trial court concluded that because no evidence was presented regarding the financial status of tortfeasor, Behrens failed to rebut the presumption of prejudice and therefore, if a *Schmidt* notice was required, he has forfeited his claim to underinsurance benefits against appellant.

## ISSUES

1. Was respondent Behrens required to provide a *Schmidt* notice to appellant American Family to allow appellant an opportunity to protect any potential subrogation rights it might have?

2. Did Behrens's failure to provide a *Schmidt* notice result in forfeiture of a claim against American Family for underinsurance benefits?

## ANALYSIS

### Standard of review

■ The parties do not challenge the trial court's findings of fact, and agree that the issues to be resolved on appeal involve only questions of law. Questions of law are reviewed by an appellate court de novo. *Castor v. City of Minneapolis*, 429 N.W.2d 244, 245 (Minn.1988).

### I.

The parties agree with the trial court's factual findings that prior to December of 1990, (over five years after the accident and over two years after Behrens settled with the tortfeasor), neither Behrens nor American Family had any reason to contemplate the filing of an underinsured motorist claim by Behrens against American Family. As such, the trial court concluded that prior to December of 1990, Behrens possessed "absolutely no right to bring a claim for underinsured motorist benefits" against the underinsurer, appellant American Family.

■ Because the trial court decided Behrens had "absolutely no right" to claim underinsured benefits (until December of 1990 when complications arose out of his injuries), the trial court found that as of the time of the auto accident, September of 1985, and as of the time of the liability settlement, September 1988, the vehicle operated by the tortfeasor was not an "underinsured motor vehicle." The trial court also concluded that if a plaintiff has no right to underinsured motorist benefits due to the absence of an underinsured motor vehicle, no right of subrogation exists. As such, the trial court concluded that Behrens's failure to provide *Schmidt* notice of the liability settlement to his underinsurance carrier would not result in forfeiture of his claim for underinsurance benefits because there was no right of subrogation to destroy at the time of the settlement. Although we understand the trial

court's reasoning, we do not agree. It is not correct that before 1990 Behrens had absolutely no right to bring a claim for underinsured motorist benefits. It is true that, based on the medical information available to him at that time, that he may have been unsuccessful. But he had the right to bring a claim for underinsured motorist benefits, for whatever it was worth, and is bound by the obligation to notify his insurer.

■ Subrogation is a limited right that comes into existence only after the insurer has paid benefits to its insured. *Schmidt v. Clothier,* 338 N.W.2d 256, 261–62 (Minn. 1983). If the tortfeasor is released before payment by the insurer, no subrogation rights ever arise. *Id.* at 262. Settlement and release of an underinsured tortfeasor does not preclude recovery of underinsurance benefits. *Id.* Because it would be unfair to deny an underinsurer the right to pursue the underinsured tortfeasor for benefits the underinsurer has paid, however, the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect its potential subrogation rights by paying underinsurance benefits before release. *Id.* at 262–63.

■ The notice requirement provides the underinsurer with a period of time in which to assess the case, evaluating relevant factors such as: (1) the amount of liability insurance remaining, if any; (2) the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation; (3) the total amount of the insured's damages; and (4) the expenses and risks of litigating the insured's cause of action. *Id.* at 263. If the underinsurer determines that recovery of underinsurance benefits it might pay is unlikely, it may simply let the "grace period" expire and permit the settlement and release,[1] thereby giving up any potential subrogation rights it may have had. On the other hand, if the underinsurer wants to preserve its subrogation rights, it could substitute its payment to the insured in an amount equal to the tentative settlement. *Id.*

■ The law is clear that a plaintiff is required to provide a *Schmidt* notice to the underinsurer of a pending liability settlement to allow the underinsurer an opportunity to protect potential subrogation rights. It is undisputed that Behrens failed to provide notice to appellant, thereby violating the requirement of *Schmidt.* We reverse the trial court on this issue.

## II.

The *Schmidt* case does not specifically indicate what the penalty is for failure to provide adequate notice. In *American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 925 (Minn.1990), the court noted that the "30–day notice requirement set out in *Schmidt* was not intended as a technical snare for unwary insured." *Id.* at 927. The court held that, *"henceforth,"* where the insured fails to provide the 30–day written notice,

> release of the tortfeasor shall be deemed prejudicial to the underinsurer. That presumption of prejudice shall be rebuttable, but the burden of demonstrating by a preponderance of the evidence the absence of prejudice shall be borne by the insured. An insured's failure to sustain that burden of proving a lack of prejudice to the insurer shall result in forfeiture.

*Baumann,* 459 N.W.2d at 927 (emphasis added).

In this case, the trial court held, in the alternative, that if a *Schmidt* notice was required, the *Baumann* case should be applied to determine whether the lack of notice results in forfeiture of Behrens's claim for underinsurance benefits. Appellant argues that a *Baumann* analysis regarding prejudice should not be applied here because *Baumann* was decided after the 1988 liability settlement and release. Appellant argues that *Baumann* should not be applied retroactively. Rather, appellant argues, Behrens's failure to provide *Schmidt* notice should result in automatic forfeiture.

---

1. The issue of what respondent's position would be had a motion to set aside the release he gave to Whiteman been successful on the grounds of mutual mistake is not before us. Thus we need

not decide whether a successful motion would have returned respondent and appellant to a position allowing respondent to comply with *Schmidt.*

Historically, when an insured failed to provide the proper notice of a pending liability settlement, the penalty has been forfeiture of underinsured benefits[2]. *See, e.g. Fladager v. Farm Bureau Mut. Ins. Co.*, 414 N.W.2d 551, 554 (Minn.App.1987); *Klang v. American Fam. Ins. Group*, 398 N.W.2d 49, 52 (Minn. App.1986) (insurer's loss of right to determine whether a subrogation action should be brought is a substantial loss). Retroactive application of a *Baumann* prejudice analysis, however, has influenced opinions of this court. *See, e.g., Sutherland v. Allstate Ins. Co.*, 464 N.W.2d 150, 150 (Minn.App.1990), *pet for rev. denied* (Minn. Mar. 15, 1991).

In this case, the trial court applied a *Baumann* prejudice analysis retroactively and determined that Behrens failed to carry the burden of rebutting the presumption of prejudice to American Family. In reviewing this issue, we are not convinced that *Baumann* should apply retroactively. If it does not, the forfeiture is automatic. But if it does, we agree with the trial court's conclusion that appellant failed to rebut the presumption of prejudice arising out of his failure to provide a *Schmidt* notice to American Family.

■ Although *Baumann* did not indicate how much evidence is required to rebut the presumption of prejudice, there was no evidence presented in this case as to the financial status of the tortfeasor. This type of evidence is relevant to the underinsurer's assessment of its subrogation interest. Before the underinsurer gives up any potential subrogation rights, one of the factors it would likely consider is the amount of assets held by the tortfeasor and the likelihood of recovery of those assets via subrogation. *See Schmidt*, 338 N.W.2d at 263. If the tortfeasor has substantial assets, that fact would weigh in favor of preserving a subrogation claim. Thus, we conclude that even if a *Baumann* analysis were applied to the facts of this case, appellant failed to rebut the presumption of prejudice, thereby forfeiting his claim for underinsurance benefits.

■ Thus, regardless of whether *Baumann* applies, we conclude Behrens has forfeited his right to a claim for underinsurance benefits. As such, we need not decide whether *Baumann* applies retroactively to this case.

It is unfortunate for Behrens that the full extent of his injuries did not develop until years later. We note there has never been a claim that his injuries, as they have developed, are not serious, and their legitimacy is not at issue. But if the unfortunate circumstances of a delayed reaction has to fall on one of two innocent parties, there seems to be no reason why it should fall on appellant, the underinsurer. Its knowledge was equally limited, as was Behrens's, and like Behrens, the file indicates no negligence on the underinsurer's part in foreseeing the future. Behrens, as a plaintiff, has the classic burden of proving his case and providing the requisite notice. Behrens cannot shift the burden of proof to defendant insurance company by the mere fact that his failure to protect his claim for underinsurance was excusable.

## DECISION

Behrens's failure to provide a *Schmidt* notice to American Family of the liability settlement resulted in forfeiture of a claim for underinsurance benefits. If a *Baumann* prejudice analysis does not apply, the forfeiture is automatic. If a *Baumann* analysis does apply, we conclude Behrens has not met the burden of rebutting the presumption of prejudice to American Family created by the failure to provide a *Schmidt* notice. Under either analysis, his claim for underinsurance benefits is forfeited.

**We affirm in part and reverse in part.**

---

**2.** This is not a case where the insured is arguing that the policy is ambiguous as to notice requirements. *See, e.g., Siebels v. American Family Mut. Ins. Co.*, 374 N.W.2d 220, 222 (Minn.App.1985) (lack of notice was justified where policy contained no provision requiring notice); *Progressive* *Cas. Ins. Co. v. Kraayenbrink*, 370 N.W.2d 455, 460 (Minn.App.1985), *pet. for rev. denied,* (Minn. Sept. 19, 1985) (lack of notice justified where policy provisions requiring notice were ambiguous).