Tena V. VAN KAMPEN, Appellant,

v.

WASECA MUTUAL INSURANCE COMPANY, n/k/a Austin Mutual Group, Respondent,

Westfield Insurance, a/k/a Westfield Group, defendant and third party plaintiff, Respondent,

v.

Rispens Seeds, Inc., et al., Third Party Defendants.

No. A07–1457.

Court of Appeals of Minnesota.

Aug. 5, 2008.

John M. Riedy, Jorun Groe Meierding, Maschka, Riedy & Ries, Mankato, MN, for appellant.

James H. Turk, Blethen, Gage & Krause, Mankato, MN, for respondent Austin Mutual Group.

Richard P. Wright, Cheryl Hood Langel, McCollum, Crowley, Moschet & Miller, Ltd., Minneapolis, MN, for respondent Westfield Insurance.

Peter C. Sandberg, Dunlap & Seeger, P.A., Rochester, MN, for third party defendants Rispens Seeds, Inc.

Considered and decided by STONEBURNER, Presiding Judge; LANSING, Judge; and WORKE, Judge.

## OPINION

LANSING, Judge.

The district court granted summary judgment dismissing Tena Van Kampen's underinsured-motorist (UIM) claims because she failed to protect her UIM insurers' subrogation rights when she entered into a joint settlement under which her daughter, son-in-law, and grandchildren received the limits of the at-fault driver's liability policy and Van Kampen received no payment. Because Van Kampen did not forfeit her right to UIM coverage, and because a genuine issue of material fact remains on whether the UIM insurers were prejudiced by inadequate notice of the settlement, we reverse in part and remand. But because summary judgment was properly granted against the third-party claims brought by the UIM insurers, we affirm in part.

## FACTS

Tena Van Kampen, her daughter, and her three grandchildren were severely injured in August 2000 when the car that Van Kampen was driving was struck by a vehicle driven by Paul Brey and owned by Rispens Seeds, Inc. Van Kampen's son-in-law owned the car that Van Kampen was driving.

Van Kampen's daughter, son-in-law, and three grandchildren sued Van Kampen, Brey, and Rispens Seeds. Before trial, the daughter, son-in-law, and grandchildren reached a tentative settlement with Brey and Rispens Seeds. Under the terms of the settlement, Van Kampen's daughter, son-in-law, and three grandchildren would receive all of Brey and Rispens Seeds $1.5 million in insurance coverage. As part of the settlement, Van Kampen would receive no payment and would also release any claim against Brey and Rispens Seeds.

Van Kampen sent notice of the settlement to her underinsured-motorist insurers on May 6, 2004. Van Kampen had UIM coverage from two sources. First, she had her personal coverage through Austin Mutual Group, which provided UIM coverage of $250,000 for each person. Second, because the car was owned by her son-in-law, each occupant was covered under the son-in-law's policy with Westfield Insurance. The Westfield policy had UIM coverage limits of $50,000 for each person and $100,000 for each occurrence.

Van Kampen's notice informed the UIM insurers that Van Kampen's daughter, son-in-law, and grandchildren would receive the full policy limits and that Van Kampen would be limited to pursuing UIM and no-fault benefits. The letter gave the UIM insurers thirty days to substitute their own payment to preserve their right to sue Brey and Rispens Seeds themselves. On May 24, 2004, Austin Mutual indicated that it was approving the settlement. On that same day, Van Kampen, her daughter, her son-in-law, and her grandchildren signed the settlement agreement. On June 10, 2004, thirty-five days after the settlement notice, Westfield also approved the settlement.

Because Van Kampen's daughter and grandchildren had not settled with Van Kampen, their claim against Van Kampen proceeded to trial. A jury found that Van Kampen was not liable, that Brey and Rispens Seeds were completely at fault, and that Van Kampen's daughter, son-in-law, and grandchildren had sustained dam-

ages of $1,685,446. Because of the jury's damages determination, Westfield paid Van Kampen's daughter and son-in-law $50,000 in UIM benefits.

Van Kampen then sued the UIM insurers to collect UIM benefits for herself. The UIM insurers moved for summary judgment against Van Kampen, arguing that Van Kampen forfeited her right to UIM coverage by settling her claims against Brey and Rispens Seeds without payment and that the settlement notice was inadequate. The district court granted summary judgment against Van Kampen. The district court also granted summary judgment against the UIM insurers' third-party claims against Brey and Rispens Seeds, which alleged that Brey and Rispens Seeds were responsible for the inadequate notice. The summary judgment dismissing the third-party claims is not challenged. Van Kampen, however, appeals the district court's summary judgment against her claim.

## ISSUES

I. Did Van Kampen forfeit her right to UIM coverage by settling her claim against Brey and Rispens Seeds without receiving payment?

II. Did Van Kampen forfeit her right to UIM coverage by failing to give the UIM insurers adequate notice of the proposed settlement?

## ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 788 (Minn.2005). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Motorsports Racing Plus, Inc. v. Arc-*tic Cat Sales, Inc., 666 N.W.2d 320, 323 n. 1 (Minn.2003). But if the nonmoving party fails to raise a material issue of fact on any element essential to establishing its case, summary judgment is appropriate. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995).

This case is about the subrogation rights of underinsured-motorist insurers. Subrogation is "the remedy by which, when the property of one person is used to discharge a duty of another ..., under such circumstances that the other will be unjustly enriched by the retention of the benefit thus conferred, the former is placed in the position of the obligee." Restatement (Third) of Suretyship and Guaranty § 27 cmt. A (1996). An insurance company can, for example, acquire a subrogation right when it pays a claim to an insured that should have been paid by a tortfeasor.

Insureds have, as a matter of equity, a duty to preserve their insurers' subrogation rights. *See Bacich v. Homeland Ins. Co.,* 212 Minn. 375, 376, 3 N.W.2d 665, 665 (1942) (noting that failure to preserve subrogation rights constitutes defense to coverage). This duty limits an insured's ability to pursue insurance benefits after settling claims against a tortfeasor. Because the insurer is placed in the position of the insured when it obtains subrogation rights, the settlement will bar the insurer from recovering against the tortfeasor. *See id.* (holding that settlement bars subrogation). Thus, an insured who settles a claim against a tortfeasor without the insurer's consent cannot then collect on the insurance policy. *Id.* Instead, the insured must either (1) collect on the policy and subrogate the claim to the insurer or (2) obtain a judgment against the tortfeasor.

When UIM coverage is involved, however, this framework thwarts the policy goals of the No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2006), which governs UIM coverage. Because UIM coverage is "add on" coverage, insureds cannot force their UIM insurers to pay before the tortfeasor's insurer pays. *See Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 858 (Minn.1993) (requiring insured to recover from tortfeasor's liability insurance before proceeding to arbitrate underinsured-benefits claim). Thus, under the ordinary subrogation framework, the insured must either obtain consent to settle or obtain a judgment against the tortfeasor. But forcing every injured insured to obtain consent or to obtain a judgment would be inconsistent with the policy goals of the No–Fault Automobile Insurance Act, which include encouraging prompt payment and easing the burden of litigation. *See Schmidt v. Clothier*, 338 N.W.2d 256, 260 (Minn.1983) (discussing statutory policies).

In *Schmidt v. Clothier*, the supreme court addressed this problem by establishing a check-substitution procedure that permits insureds to obtain prompt payment. *Id.* at 262–63. The decision "has been a model for both state courts and the insurance industry because of its substitute payment answer to the limits exhaustion dilemma posed by underinsured motorist insurer insistence upon retention of subrogation rights." 3 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance* § 42:17 (4th ed.2004).

The *Schmidt–Clothier* procedure permits insureds to settle with the tortfeasor after first giving notice of the proposed settlement to their UIM insurers. *Schmidt*, 338 N.W.2d at 263. The UIM insurer then has thirty days to respond to the proposed settlement. *Id.* If the UIM insurer wants to preserve its subrogation rights, it must pay the insured the amount of the proposed settlement. *Id.* The UIM insurer may then proceed directly against the tortfeasor. *Id.* If the UIM insurer does not respond to the notice within thirty days, the UIM insured is permitted to accept the settlement and extinguish the UIM insurer's subrogation rights. *Id.*

In this case, the UIM insurers—Austin Mutual and Westfield Insurance—argue that Van Kampen failed in two ways to comply with the *Schmidt–Clothier* procedure. First, they argue that Van Kampen forfeited her UIM coverage because she settled with the tortfeasor without receiving payment. Second, they argue that Van Kampen failed to provide adequate notice of the settlement.

## I

The UIM insurers argue that Van Kampen forfeited her UIM coverage by settling her claim against Rispens Seeds without receiving payment. They argue that the terms of the settlement prevented them from asserting their subrogation rights for two reasons. First, they argue that the settlement terms made it impossible for them to "substitute their check" to protect their subrogation rights. Second, they argue that Van Kampen failed to reach a "best settlement" with Rispens Seeds. We reject both arguments.

First, contrary to the district court's conclusion, the proposed settlement did not prevent the UIM insurers from asserting their subrogation rights. Because Van Kampen did not receive payment, the district court concluded that the UIM insurers were unable to "substitute their check" and prevent Van Kampen from signing the release. This conclusion is consistent with the *language* used in numerous cases that emphasizes—perhaps misleadingly—the act of check substitution. But this ap-

proach does not account for the *purpose* of the check-substitution procedure.

■ The *Schmidt–Clothier* procedure permits UIM insureds to settle their claims against the tortfeasor while permitting UIM insurers to preserve their subrogation rights. *See Schmidt*, 338 N.W.2d at 263 (balancing interests of parties). If the UIM insurer elects to preserve its subrogation rights, it can object to the settlement and prevent an insured from settling the claim. *Id.* When the insurer asserts its subrogation rights, it must "substitute its check" and pay the insured the amount of the proposed settlement. *Id.* Thus, through check substitution, the *Schmidt–Clothier* procedure provides the insured with prompt payment.

The central act in this procedure, however, is not the check substitution. Instead, it is the insurer's act of objecting to the settlement and asserting its subrogation rights. The terms of Van Kampen's settlement did not prevent the UIM insurers from asserting their subrogation rights. It is reasonable to question, in these circumstances, what a UIM insurer must do to assert those rights. It may have been sufficient to simply object to the settlement and pay no money. But we need not answer that question in this case. The UIM insurers took no action at all to object to the settlement agreement. The UIM insurers needed to do *something* to assert their subrogation rights. Because the UIM insurers failed to assert their rights and acquiesced in the settlement agreement, we see no basis for concluding that Van Kampen forfeited her UIM coverage by settling without payment.

■ Second, as the district court recognized, if an insured is eligible for UIM insurance benefits, the "insurer may not deny a UIM claim based on the insured's failure to reach the *best settlement*

with the tortfeasor." *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 607 (Minn.2001).

Although UIM coverage is "add on" coverage, the *Schmidt–Clothier* procedure permits the UIM insured to settle for less than the tortfeasor's policy limits. The UIM insured might do this to reduce litigation costs or because of concerns about liability. *Dohney*, 632 N.W.2d at 605. But an under-the-limits settlement raises further issues: Does the insured really qualify for UIM coverage? Is the insured improperly trying to use UIM coverage as primary coverage?

■ Because of these issues, UIM insurers argued in *Dohney* that the insured should be required to reach a "best settlement" with the tortfeasor. *Id.* at 603. But the supreme court in *Dohney* concluded that a "best settlement" test would undermine the UIM's statutory purpose of "easing the burden of litigation and encouraging prompt payment of claims." 632 N.W.2d at 606. As a result, the supreme court rejected any rule requiring that a settlement under the *Schmidt–Clothier* procedure be a "best settlement." *Id.* at 607. Instead, a UIM insurer must directly challenge the insured's eligibility for UIM benefits by requiring the insured to demonstrate that the tortfeasor was underinsured. *See id.* at 607 n. 7 (noting that "the insured still must prove damages greater than the tortfeasor's policy limit in order to be eligible for UIM benefits").

■ Thus, under the *Dohney* rule, Van Kampen did not forfeit her coverage by failing to reach a "best settlement." The UIM insurers, however, attempt to distinguish *Dohney* on two grounds. First, Austin Mutual argues that "any plaintiff could accept zero for her injuries and look to her UIM benefits for compensation as a first party insurer." Not so. As explained in *Dohney*, the insured must still prove that the tortfeasor was underin-

sured. *Id.* at 607 n. 7. In addition, the UIM insurer could prevent a zero-dollar settlement by asserting its subrogation rights. Second, Westfield argues that Van Kampen forfeited her UIM coverage because she did not receive consideration in exchange for releasing Brey and Rispens Seeds. But this argument assumes that consideration in a contract requires cash payment. In fact, "[c]onsideration may consist of some benefit accruing to one party or some detriment suffered by the other." *See Estrada v. Hanson,* 215 Minn. 353, 355, 10 N.W.2d 223, 225 (1943) (defining consideration). Thus, the settlement agreement under which Van Kampen's family received $1.5 million from Brey and Rispens Seeds constituted a valid contract, and the terms of the agreement did not prevent the UIM insurers from asserting their subrogation rights. Therefore, the UIM insurers have not provided a basis on which to distinguish *Dohney.*

Furthermore, even if the supreme court *had* adopted a "best settlement" rule in *Dohney,* the rationale for such a rule would not apply in this case. The rationale for a "best settlement" rule would be that an insured who settles for less than the tortfeasor's coverage limits might not really be underinsured. *Dohney,* 632 N.W.2d at 603. But in this case it is undisputed that Brey and Rispens Seeds' coverage limits were exhausted. And the UIM insurers have not argued that Brey and Rispens Seeds were not underinsured. Thus, there would be no basis for applying a "best settlement" rule in this case.

Ordinarily, a release without payment might suggest that the tortfeasor was not liable. Thus, the UIM insurers could argue that there was no underinsured vehicle. But that would be a direct challenge to whether the tortfeasor was underinsured as permitted by *Dohney*—not a challenge to the structure of the settlement.

In this case, however, there is no dispute that Brey and Rispens Seeds were liable for Van Kampen's injuries.

Van Kampen and her family apparently structured the settlement in a way that maximizes insurance recovery. But the UIM insurers have not established that this was improper. The UIM insurers had two options for challenging this settlement: (1) asserting their subrogation rights or (2) acquiescing to the settlement and later requiring Van Kampen to prove that Brey and Rispens Seeds were underinsured. These options adequately protected the UIM insurers from overpayment. But the UIM insurers failed to exercise either option. The approach the UIM insurers wish to take in this case—second-guessing the structure of the settlement after it has already been made—is not needed to protect their legitimate interests.

Because the terms of Van Kampen's settlement did not prevent the UIM insurers from asserting their subrogation rights and the supreme court has rejected a "best settlement" test, Van Kampen did not forfeit her UIM insurance coverage when she settled. Therefore, summary judgment should not have been granted based on the terms of Van Kampen's settlement.

## II

Under the *Schmidt–Clothier* procedure, UIM insureds must send their UIM insurers notice of their proposed settlement. *Schmidt,* 338 N.W.2d at 263. The notice must give the UIM insurers thirty days to respond and must inform the insurer of the proposed settlement. *Am. Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 925 (Minn.1990). The notice must identify (1) the insured, (2) the tortfeasor, (3) the tortfeasor's liability insurer, (4) the limits of the tortfeasor's automobile-liability insurance, and (5) the agreed-on settlement. *Id.* at 927. The

UIM insurer can deny UIM coverage if it is prejudiced by inadequate notice. *Id.* The failure to provide adequate notice creates a presumption of prejudice, but the insured can introduce evidence to rebut this presumption. *Id.*

In this case, the district court did not address whether the notice was adequate. The record, however, demonstrates that Van Kampen's settlement notice was inadequate for two reasons. First, it fails to clearly indicate that under the settlement Van Kampen would release her claim against Brey and Rispens Seeds. Although the letter was written by Van Kampen's attorney, was labeled a *"Schmidt–Clothier"* notice, and stated that Van Kampen would be limited to UIM and no-fault benefits, the notice does not state the settlement itself will involve Van Kampen—as opposed to her daughter, son-in-law, and grandchildren. Second, Van Kampen did not wait thirty days before entering into the settlement agreement. Although Austin Mutual consented to the settlement during the thirty-day period, Westfield did not. Because Van Kampen settled with the tortfeasor before the thirty-day period expired, she did not provide Westfield with the thirty-day notice.

■■■ Nonetheless, the existence of prejudice presents a genuine issue of material fact. Because the settlement notice was sent by Van Kampen's attorney and labeled a *"Schmidt–Clothier* notice," the meaning of the notice would have been sufficiently clear to many insurers. In addition, Van Kampen produced an affidavit indicating that the UIM insurers were present at the settlement negotiations. Thus, the record would permit a fact-finder to conclude that the UIM insurers had actual notice of the terms of the settlement. On these facts, Van Kampen may therefore be able to rebut the presumption that the UIM insurers were prejudiced by defects in the notice itself.

Similarly, Van Kampen may be able to rebut the presumption that Westfield was prejudiced by her failure to wait thirty days before settling her claim. Westfield did not provide a response until thirty-five days after receiving the notice. Based on this fact, Van Kampen would be able to establish that Westfield would not have asserted its subrogation rights even if she had waited for a response. In addition, because Westfield's late response approved the settlement, it is even more unlikely that Westfield would have asserted its subrogation rights.

The UIM insurers argue that Van Kampen failed to rebut the presumption because Van Kampen failed to show that Brey and Rispens Seeds would have been financially unable to pay a judgment in excess of its insurance limits. In some cases, this court has suggested that such evidence is necessary. *See Kluball v. Am. Family Mut. Ins. Co.,* 706 N.W.2d 912, 918–19 (Minn.App.2005) (affirming summary judgment when defendant failed to introduce evidence about tortfeasor's financial status); *Behrens v. Am. Family Mut. Ins. Co.,* 520 N.W.2d 763, 768 (Minn. App.1994) (same), *review denied* (Minn. Oct. 14, 1994). Although evidence that the tortfeasor could not pay any amount greater than its insurance coverage would be sufficient to rebut the presumption of prejudice, it is not necessary in every case. In this case, the record reveals very little connection, if any, between the UIM insurers' failure to assert their subrogation rights and the defects in the notice. Instead, the record contains evidence that the UIM insurers were aware of the terms of the settlement and failed—through choice or neglect—to object to the settlement. Although Rispens Seeds apparently could have paid amounts in excess of their

liability coverage, Van Kampen may be able to show that her UIM insurers would have failed to pursue subrogation even if notice had been adequate.

Thus, although Van Kampen failed to provide adequate notice, Van Kampen may be able to show that the UIM insurers were not prejudiced. Therefore, a genuine issue of material fact exists, and the summary judgment cannot be affirmed based on inadequate notice.

Finally, we note that the district court granted summary judgment against the UIM insurers' third-party claims against Brey and Rispens Seeds. In the third-party complaints, the UIM insurers attempted to assert subrogation rights against Brey and Rispens Seeds on the basis that Brey and Rispens Seeds were responsible for the inadequate notice of the settlement. Regardless of whether the settlement notice was adequate, however, the settlement extinguished the UIM insurers' subrogation rights. *See Bacich,* 212 Minn. at 376, 3 N.W.2d at 665 (holding that settlement bars subrogation). Accordingly, the district court correctly granted summary judgment against the UIM insurers' third-party claims.

## DECISION

Because the UIM insurers' subrogation rights were extinguished as a matter of law, and the third-party claims were properly dismissed, we affirm in part. Because Van Kampen did not forfeit her right to UIM coverage by settling her claims against the tortfeasor without payment and because a genuine issue of material fact exists about whether the UIM insurers were prejudiced by inadequate notice of the settlement, we reverse in part and remand the district court's summary judgment.

**Affirmed in part, reversed in part, and remanded.**